178 Cal.App.3d 159 (1986)
223 Cal. Rptr. 503
In re MICHAEL V., a Minor.
THE PEOPLE, Plaintiff and Respondent,
v.
MICHAEL V., Defendant and Appellant.
Docket No. A029437.
Court of Appeals of California, First District, Division Four.
February 28, 1986.
*162 COUNSEL
Phillip H. Cherney, under appointment by the Court of Appeal, for Defendant and Appellant.
John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.
[Opinion certified for partial publication.[*]]
OPINION
CHANNELL, J.
Michael V. (Michael), a minor, appeals from an order of the juvenile court continuing his status as a ward (Welf. & Inst. Code, *163 §§ 602, 777),[1] removing him from the custody of his parents (§ 726), and committing him to the Youth Authority (§ 731).
In this case of first impression,[2] we are called upon to decide whether a juvenile court judge may consider previously suppressed evidence during the disposition phase of a juvenile delinquency proceeding. Absent a statute to the contrary, we have concluded there is no constitutional bar, state or federal, to the consideration of such evidence at a disposition hearing. Indeed, the Arnold-Kennick Juvenile Court Law (§ 200 et seq.) expressly provides that the juvenile court "shall receive in evidence" such "relevant and material evidence as may be offered" on the question of the proper disposition to be made of the minor. (§ 706; see also § 725.5.) It was therefore proper for the juvenile court to consider at Michael's disposition hearing the fact that he was carrying three bindles of cocaine and $35 in currency when he was taken into custody, even though that same evidence had been ordered suppressed at an earlier stage in the juvenile proceedings. When considered with other evidence indicating the previous disposition had not been effective in rehabilitating Michael, we hold further that the juvenile court did not abuse its discretion in committing him to the Youth Authority. We therefore affirm the trial court's judgment.

I. PROCEDURAL FACTS

A. The Petitions

On August 30, 1984, separate petitions were filed against Michael pursuant to sections 602 and 777, respectively.[3] The section 602 petition alleged that Michael, on August 28, 1984, had possessed cocaine and had possessed cocaine for sale, in violation of Health and Safety Code sections 11350 and 11351. That same petition further alleged that based on these allegations, the previous disposition of the juvenile court had been ineffective in rehabilitating Michael, within the meaning of sections 726 and 777.
The section 777 supplemental petition alleged that Michael had last appeared before the juvenile court on February 9, 1984, when he was declared a ward under section 602 for having committed a robbery. (Pen. Code, *164 § 211.) It was further alleged that in February, he had been ordered, inter alia, to obey all laws, to spend 60 days in juvenile hall, to refrain from the use of alcohol and drugs, and to remain out of the Chinatown area in Salinas. Finally, the supplemental petition alleged that the previous court order had been ineffective in rehabilitating Michael in that "on August 28, 1984, he was arrested for possession of cocaine and possession of cocaine for sale on Soledad Street, [in] the Chinatown area."

B. Suppression and Jurisdiction Hearing

 1. Suppression Motion

(1) (See fn. 5.) Following detention and "Dennis H." hearings,[4] the matter was set for a suppression hearing (§ 700.1)[5] and a jurisdiction hearing as to both petitions. At that time, the parties stipulated that both the suppression and the jurisdictional issues would be submitted on the police report; that the first full paragraph of the police report was to be considered for purposes of probable cause only; that the police officers had no search or arrest warrant; and that the controlled substance seized from Michael was cocaine.[6]
Briefly, the first paragraph of the police report (considered only on the probable cause issue) indicated that officers had received information that "a Mexican male adult, named Michael, between the age of 17 and 19 years of age" and wearing tan pants and a black leather jacket, was selling cocaine at a certain location in Chinatown. The police were told that the suspect kept bindles of what appeared to be cocaine in his jacket pocket.
*165 According to the remaining portion of the police report (considered on all issues), the officers were in the Chinatown area, they approached Michael (who fit the general description given) and asked him if he had anything on him. Michael raised his arms away from his side and said nothing. The officer reached into Michael's left front pocket and found a bindle containing a white powder substance, which appeared to be cocaine. After taking Michael into custody for possession of cocaine, the officer searched Michael further and found two more bindles of cocaine and $35 in currency. After being advised of his rights, Michael acknowledged he had been dealing in cocaine for two weeks, but refused to give investigators specific information as to the supplier of his cocaine.
At the suppression hearing, Michael challenged the admissibility of the cocaine bindles and currency found on him, as well as his later statements. Michael's motion to suppress was granted.[7]

2. Jurisdictional Findings

Following its suppression ruling, the juvenile court judge found that none of the allegations in the section 602 petition were true. Referring to the section 777 supplemental petition, the judge noted that the allegations "just said [Michael] was arrested with possession of cocaine on Soledad Street in the Chinatown area, so that does indicate a violation of [a] condition of probation as to where he was located." He therefore found the allegations of the supplemental petition to be true. The matter was then set for a disposition hearing.

C. Disposition Hearing

Before the disposition hearing, a probation report was prepared (see §§ 280, 702; rule 1371(b)), which included within it a discussion of the circumstances of the violation on August 28, including references to the cocaine and currency previously ordered suppressed. The judge began the disposition hearing by indicating he had read the probation report and by stating his tentative views of the case: "I will tell you frankly, I think it calls for Youth Authority." As one of his reasons,[8] the judge stated, "I just think that anybody who is involved in a robbery [referring to Michael's prior offense] and then is down in this  in the Chinatown area where he was told not to be, he lives close by, but he was told not to be in the area, *166 with three bindles of cocaine and a hundred [sic] dollars on him,[[9]] he is giving us a message loud and clear. [¶] Now, having said that, I will be willing to have all kinds of arguments to the contrary to show why it shouldn't happen."
After defense counsel objected, the judge continued the matter so counsel could research and prepare points and authorities as to whether or not the suppressed evidence could be considered when determining a proper disposition. The court subsequently ordered Michael committed to the Youth Authority. In doing so, the court expressly considered "the fact that the minor was found in the forbidden area, as described in the probation report, and in possession of three bindles of cocaine and $35.00 in currency."[10]

II. DISCUSSION

A. Nature of Hearings on Supplemental Petition

(2) (See fn. 11.), (3) (See fn. 12.) The precise issue in this case is whether, in a juvenile delinquency proceeding,[11] a juvenile court judge may consider previously suppressed evidence when making a determination of disposition[12] on a supplemental petition filed pursuant to section 777.
Preliminarily, it is helpful to our analysis to clarify the nature of the hearing on a supplemental petition. The statutory law is silent on the subject. (See In re Francis W. (1974) 42 Cal. App.3d 892, 897 [117 Cal. Rptr. 277].) In his argument, the Attorney General seeks to analogize the hearing with parole or probation revocation hearings, and cites cases where the consideration of illegally seized evidence was upheld. (See United States v. Vandemark (9th Cir.1975) 522 F.2d 1019, 1022 [probation revocation]; People v. Hayko (1970) 7 Cal. App.3d 604, 609 [86 Cal. Rptr. 726] [same]; In re Martinez (1970) 1 Cal.3d 641, 650 [83 Cal. Rptr. 382, 463 P.2d 734] [parole revocation].) But a hearing on a supplemental petition is neither of *167 these. (4) A juvenile court may neither grant (In re Owen E. (1979) 23 Cal.3d 398, 403-404 [154 Cal. Rptr. 204, 592 P.2d 720]; Breed v. Superior Court (1976) 63 Cal. App.3d 773, 787 [134 Cal. Rptr. 228]) nor revoke parole. (In re Ronald E. (1977) 19 Cal.3d 315, 326-328 [137 Cal. Rptr. 781, 562 P.2d 684].) And analogies to an adult probation revocation hearing were rejected as "superficial" by our Supreme Court in In re Arthur N. (1976) 16 Cal.3d 226, 235-236 [127 Cal. Rptr. 641, 545 P.2d 1345]. Although each proceeding is triggered by a petition alleging acts of misconduct by a person already subject to the jurisdiction of the court, neither the purposes nor the consequences of these disparate proceedings are the same. (Ibid.)
To promote uniformity in practice and procedure in this area (see rule 1301(b)), the Judicial Council, acting pursuant to its constitutional and statutory authority (Cal. Const., art. VI, § 6; § 265), has prescribed that a two-part hearing be held on a supplemental petition, analogous to the jurisdiction and disposition hearings held on the original petition. (Rule 1392(d); see Adv. Com. com., rule 1392(d), Deerings Ann. Rules of Court (1980 ed.) p. 423; 6 Witkin, Summary of Cal. Law (8th ed. 1984 Supp.) Parent and Child, § 479A, p. 568.)[13] (5) As this rule is not inconsistent with statute, it has the force of positive law binding on the courts and parties in the same way as a procedural statute. (See People v. Wright (1982) 30 Cal.3d 705, 711-712 [180 Cal. Rptr. 196, 639 P.2d 267]; Albermont Petroleum, Ltd. v. Cunningham (1960) 186 Cal. App.2d 84, 89 [9 Cal. Rptr. 405].) (6) It follows that when the juvenile court is determining the truth of the allegations of a supplemental petition, i.e., the jurisdictional phase, the minor is entitled to the same panoply of constitutional protections (including proof beyond a reasonable doubt and the benefits of the exclusionary rule) that he would have been entitled to on an original petition. (In re Arthur N., supra, 16 Cal.3d at p. 240; In re Francis W., supra, 42 Cal. App.3d at pp. 897-898.)[14] Thereafter, when determining the proper disposition on a supplemental petition, i.e., the dispositional phase, the same procedures used at the disposition hearing on the original petition apply.
A disposition hearing, in turn, is most analogous to a sentencing hearing in an adult criminal proceeding. (See, e.g., 1 California Juvenile Court Practice, supra, ch. 9, p. 225 et seq. "Dispositional Hearing (Sentencing)".) *168 Absent any juvenile court case law on the subject, we will be looking to cases involving adult sentencing procedures for whatever guidance they may provide on the issue before us.

B. Admissibility of Suppressed Evidence at Disposition Hearing

 1. Statutory Exclusionary Rule in Penal Code Section 1538.5

Both at trial and at this level, Michael has relied on People v. Belleci, supra, 24 Cal.3d 879 to support his position. In Belleci, a 20-year-old drug offender, being tried as an adult, was committed to the Youth Authority on one count after his motion to suppress relating to another count had been granted pursuant to Penal Code section 1538.5 (hereafter, section 1538.5). The Supreme Court held that the trial court committed prejudicial error in admitting, at the sentencing hearing, evidence that previously had been suppressed.
Significantly, however, the Supreme Court refused to base its ruling either on constitutional grounds or as a judicially declared rule of evidence. (People v. Belleci, supra, 24 Cal.3d at pp. 882-883.) Instead, it relied exclusively on an interpretation of section 1538.5, the statute governing motions to suppress in criminal proceedings. "Subdivision (d) of section 1538.5 declares that `If a search or seizure motion is granted pursuant to the proceedings authorized by this section, the property or evidence shall not be admissible against the movant at any trial or other hearing' unless the People seek reconsideration of the ruling by invoking other provisions of the section or by appeal. No such review was sought, and the question therefore is whether the sentencing proceeding is a `hearing' within the meaning of this statute." (Id., at p. 883.) After concluding that a sentencing proceeding was a "hearing" in every customary sense of the word (ibid.), the court explained that its reading of the statute "does not make all illegally obtained evidence inadmissible `at any trial or other hearing,' but only such evidence as has been the subject of a motion to suppress `granted pursuant to the proceedings authorized by this section,' i.e., section 1538.5." (Id., at p. 887.) To that extent alone, the court stated, the Legislature had enacted a "`statutory exclusionary rule.'" (Ibid.)[15]

*169 2. Inapplicability of Belleci to Juvenile Court

(7) Section 1538.5, however, is inapplicable to juvenile court proceedings. (In re David G. (1979) 93 Cal. App.3d 247, 252-255 [155 Cal. Rptr. 500].) Shortly after the David G. decision, the Legislature enacted section 700.1 as a juvenile court counterpart to Penal Code section 1538.5. (Stats. 1980, ch. 1095, § 2, p. 3511; see Derrick J. v. Superior Court (1983) 146 Cal. App.3d 748, 751 [194 Cal. Rptr. 348]; Abdullah B. v. Superior Court (1982) 135 Cal. App.3d 838, 842 [185 Cal. Rptr. 784]; In re Steven H., supra, 130 Cal. App.3d 449, 453.) Conspicuously absent from section 700.1, however, is any language comparable to that portion of section 1538.5 relied on in Belleci.[16]
Appellant acknowledges the lack of any specific statutory language restricting the use of previously suppressed evidence at juvenile disposition hearings. To bring his case within the analytical framework of Belleci, he relies instead on the general evidentiary principles set forth in section 701 of the juvenile court law. It reads, in part: "The admission and exclusion of evidence shall be pursuant to the rules of evidence established by the Evidence Code and by judicial decision. Proof beyond a reasonable doubt supported by evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, ..." (8) But section 701 applies only to jurisdiction hearings (Thompson, Cal. Juvenile Court Deskbook (Cont.Ed.Bar, 2d ed. 1984) § 8.30, p. 116) and, as already noted, the exclusionary rule is recognized in that phase of a section 602 delinquency proceeding. (See fn. 12, ante.)

3. Admissibility of "Relevant and Material" Evidence

The admissibility of evidence at a disposition hearing is actually controlled by section 706, which provides, in part: "After finding that a minor is a person described in Section 601 or 602, the court shall hear evidence on the question of the proper disposition to be made of the minor. The court shall receive in evidence the social study of the minor made by the probation officer and such other relevant and material evidence as may be offered. ..." (Italics added; see also rule 1371(d).) Further, in 1982, section 725.5 was added to the juvenile court law. It reads: "In determining the judgment and order to be made in any case in which the minor is found to be a person described in Section 602, the court shall consider, in addition to other relevant and material evidence, (1) the age of the minor, (2) the circumstances and gravity of the offense committed by the minor, and (3) the minor's previous delinquent history."
*170 (9) These statutes reflect the strong public interest in imposing a proper disposition and make it essential that a juvenile court judge has broad access to relevant information concerning a minor found to have committed delinquent acts.[17] Regarding adult sentencing, the United States Supreme Court has said: "Highly relevant  if not essential  to [a trial judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial." (Williams v. New York (1949) 337 U.S. 241, 247 [93 L.Ed. 1337, 1342, 69 S.Ct. 1079], fn. omitted.) To require rigid adherence to the exclusionary rule during the juvenile disposition process would deprive the juvenile court judge of access to highly reliable information pertinent to the formulation of a proper disposition. Conversely, no appreciable increment in deterrence of police misconduct would result from applying a second exclusion at the disposition hearing after the rule has once been applied at the trial itself. (See 1 La Fave, Search and Seizure, supra, § 1.4(f), pp. 75-76; § 1.5(b), p. 89.)
Thus, in contrast to the statutory exclusionary rule found controlling in Belleci, we find that sections 706 and 725.5 of our juvenile court law expressly authorize the juvenile court to receive and consider otherwise inadmissible evidence at the disposition hearing so long as it is relevant and material to the disposition issue.[18]
*171 In the absence of any statutory exclusionary rule, we must next determine whether the state or federal constitutions bar the consideration of the illegally obtained evidence at the disposition hearing.

4. Impact of Proposition 8

(10) Our conclusion under state law is actually reinforced by the adoption in 1982 of Proposition 8 which, in part, added section 28, subdivision (d) (hereafter, section 28(d)) to article I of the California Constitution. That section provides, inter alia: "Except as provided by statute hereafter enacted by a two-thirds vote of the membership in each house of the Legislature, relevant evidence shall not be excluded in any criminal proceeding, including pretrial and post conviction motions and hearings, or in any trial or hearing of a juvenile for a criminal offense, whether heard in juvenile or adult court." (Italics added.)
Analyzing that language, our Supreme Court has concluded that "the electorate intended to mandate admission of relevant evidence, even if unlawfully seized, to the extent admission of the evidence is permitted by the United States Constitution." (In re Lance W. (1985) 37 Cal.3d 873, 887-888 [210 Cal. Rptr. 631, 694 P.2d 744].) Further, section 28(d) has limited the judiciary's power "to create nonstatutory exclusionary rules, whether denominated rules of procedure, rules of evidence, or substantive rules, for the exclusion of unlawfully seized evidence if those rules afford greater protection to a criminal defendant than does the Fourth Amendment." (Id., at pp. 888-889, fn. omitted.)

5. The Federal Exclusionary Rule Does Not Apply

 a. United States Supreme Court

(11) In determining the scope of the federal exclusionary rule, we are bound by the decisions of the United States Supreme Court. (In re Lance W., supra, 37 Cal.3d at p. 882.) (12) Although that court has never been faced with our precise issue, either in a juvenile or adult context, it has said that "[d]espite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons." (United States v. Calandra (1974) 414 U.S. 338, 348 [38 L.Ed.2d 561, 571, 94 S.Ct. 613].) "Once guilt has been determined, evidence which would be inadmissible on the issue of guilt may *172 nevertheless be received as bearing on the punishment to be imposed. (Williams v. New York (1949) 337 U.S. 241....)" (People v. Peterson (1973) 9 Cal.3d 717, 725 [108 Cal. Rptr. 835, 511 P.2d 1187].)

b. Analogous Rulings in Other Jurisdictions

Absent any binding decision by the United States Supreme Court, we look to the federal circuits and other state courts for further guidance on the issue. (See People v. Bradley (1969) 1 Cal.3d 80, 86 [81 Cal. Rptr. 457, 460 P.2d 129].) We find that the prevailing rule in adult criminal proceedings elsewhere is that illegally seized evidence may be considered at sentencing. (See, e.g., United States v. Butler (5th Cir.1982) 680 F.2d 1055; United States v. Lee (4th Cir.1976) 540 F.2d 1205, 1210-1212; United States v. Vandemark, supra, 522 F.2d at pp. 1021-1025; United States v. Schipani (2d Cir.1970) 435 F.2d 26 [22 A.L.R.Fed. 852], cert. den., 401 U.S. 983 [28 L.Ed.2d 334, 91 S.Ct. 1198]; see also Elson v. State (Alaska 1983) 659 P.2d 1195, 1202-1205; State v. Campbell (1979) 43 Ore.App. 979 [607 P.2d 745, 748-750]; State v. Swartz (Iowa 1979) 278 N.W.2d 22; State v. Banks (1978) 157 N.J. Super. 442 [384 A.2d 1164, 1168-1169]; State v. Benge (1974) 110 Ariz. 473 [520 P.2d 843, 849-850].) In his treatise on the Fourth Amendment, Professor La Fave notes our Supreme Court's decision in People v. Belleci, supra, 24 Cal.3d 879, as an isolated example where legislation was deemed to have caused the issue to be decided the other way. (See 1 La Fave, Search and Seizure (1985 pocket supp.) § 1.4, p. 65, fn. 76.)
In striking a proper balance between the interests of the judicial system in sentencing and the purposes of the exclusionary rule, however, most of the jurisdictions referred to above have sought to avoid a blanket exception to the exclusionary rule that might provide a new incentive for illegal police conduct. (See id., at p. 65, fn. 77.) These qualifications on the general rule of admissibility have been succinctly summarized by the Alaska Supreme Court: "In summary, we conclude that where the state is able to prove (1) that the illegal evidence is reliable, (2) that the police did not obtain the evidence as a result of gross or shocking misconduct, and (3) that the evidence was not obtained for purposes of influencing the sentencing court, the illegally seized evidence may be considered by the sentencing court in fashioning a defendant's sentence." (Elson v. State, supra, 659 P.2d at p. 1205, fns. omitted); compare United States v. Vandemark, supra, 522 F.2d at pp. 1022-1025 [illegal evidence admissible at sentencing] with Verdugo v. United States (9th Cir.1968) 402 F.2d 599, 609-613 [illegal evidence obtained to influence sentencing inadmissible].) (13) There is, however, no indication in our record that the cocaine and currency found on Michael was unreliable, that the officer's conduct in seizing it was gross or shocking, or that the evidence was obtained by the officer with a motivation to enhance the disposition later imposed on Michael.

*173 6. Conclusion

Finally, we note that in cases such as In re Gault (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428] and In re Winship (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068], the Supreme Court has been careful to limit its holdings recognizing the due process rights of minors to the jurisdiction (or adjudicatory) phase of juvenile delinquency proceedings. "The problems of pre-adjudication treatment of juveniles, and of post-adjudication disposition, are unique to the juvenile process; hence what we hold in this opinion with regard to the procedural requirements at the adjudicatory stage has no necessary applicability to other steps of the juvenile process." (In re Gault, supra, 387 U.S. at p. 31, fn. 48 [18 L.Ed.2d at p. 548].) "And the opportunity during the post-adjudicatory or dispositional hearing for a wide-ranging review of the child's social history and for his individualized treatment will remain unimpaired." (In re Winship, supra, 397 U.S. at p. 366 [25 L.Ed.2d at p. 377].)
We therefore conclude that there is no statutory or constitutional prohibition on the consideration of illegally obtained evidence at a juvenile delinquency disposition hearing. To the contrary, sections 706 and 725.5 of the juvenile court law expressly authorize the juvenile court judge to receive and consider all relevant and material evidence offered on the question of a delinquent minor's proper disposition. Thus, even though that evidence may have been illegally obtained and was ordered suppressed at an earlier phase of the proceeding, it was proper for the juvenile court below to consider the fact that Michael was found in possession of the cocaine and currency when it decided Michael's disposition.

C. Commitment to Youth Authority[*]
.... .... .... .... .... .... .
The judgment is affirmed.
Anderson, P.J., and Sabraw, J., concurred.
Appellant's petition for review by the Supreme Court was denied May 8, 1986.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II C.
[1] Unless otherwise indicated, all section references are to the Welfare and Institutions Code.
[2] See, e.g., 1 California Juvenile Court Practice (Cont.Ed.Bar 1981) section 9.28, page 242; 1 La Fave, Search and Seizure (1978) section 1.5(b), page 89; Fox, Juvenile Courts in a Nutshell (3d ed. 1984) section 54, page 219.
[3] With proper allegations, a single unitary petition could have been filed under sections 602 and 777. (See In re Michael B. (1980) 28 Cal.3d 548, 554-555 [169 Cal. Rptr. 723, 620 P.2d 173]; In re Reynaldo R. (1978) 86 Cal. App.3d 250, 254-255 [150 Cal. Rptr. 71].)
[4] See In re Dennis H. (1971) 19 Cal. App.3d 350 [96 Cal. Rptr. 791]; see also California Rules of Court (hereafter rule), rule 1326(b).
[5] Section 700.1 is the sole statutory basis for search and seizure suppression motions in the juvenile court. It provides, in its entirety: "Any motion to suppress as evidence any tangible or intangible thing obtained as a result of an unlawful search or seizure shall be heard prior to the attachment of jeopardy and shall be heard at least five judicial days after receipt of notice by the people unless the people are willing to waive a portion of this time. [¶] If the court grants a motion to suppress prior to the attachment of jeopardy over the objection of the people, the court shall enter a judgment of dismissal as to all counts of the petition except those counts on which the prosecuting attorney elects to proceed pursuant to Section 701. [¶] If, prior to the attachment of jeopardy, opportunity for this motion did not exist or the person alleged to come within the provisions of the juvenile court law was not aware of the grounds for the motion, that person shall have the right to make this motion during the course of the proceeding under Section 701."
[6] The minor expressly waived his right to confront adverse witnesses and agreed to the stipulation. Further, it was understood by all that this procedure was not intended to be an indirect or "slow plea" to the allegations. (See Bunnell v. Superior Court (1975) 13 Cal.3d 592, 604 [119 Cal. Rptr. 302, 531 P.2d 1086]; In re Steven H. (1982) 130 Cal. App.3d 449 [181 Cal. Rptr. 719]; compare In re Mosley (1970) 1 Cal.3d 913, 924, fn. 9, 927 [83 Cal. Rptr. 809, 464 P.2d 473].)
[7] As the district attorney did not seek appellate review of the court's decision, we accept its conclusion that the questioned evidence was illegally obtained. (Cf. People v. Belleci (1979) 24 Cal.3d 879, 883 [157 Cal. Rptr. 503, 598 P.2d 473].)
[8] The full reasons underlying the juvenile court judge's ultimate commitment order to the Youth Authority are set forth in part II C, infra.
[9] The judge later recognized the correct amount was $35.
[10] The court continued: "The minor received the benefit of the exclusionary rule by not having a new jurisdictional  a new jurisdiction [finding] attached by reason of possession of the sale and possession of cocaine charges. However, because the purpose of disposition is improved rehabilitation of a minor, it seems unavoidable, and, as a matter of fact, uncontrollable that the fact of his presence and possession of cocaine not be considered in determining what must be done."
[11] The exclusionary rule does not apply during section 300 juvenile dependency proceedings. (In re Christopher B. (1978) 82 Cal. App.3d 608, 612-615 [147 Cal. Rptr. 390]; In re Robert P. (1976) 61 Cal. App.3d 310, 320-321 [132 Cal. Rptr. 5].)
[12] The exclusionary rule does apply during the jurisdictional phase of a section 602 juvenile delinquency proceeding. (In re Scott K. (1979) 24 Cal.3d 395, 400-403 [155 Cal. Rptr. 671, 595 P.2d 105]; see also § 701 [requiring evidence "legally admissible in the trial of criminal cases" to support a § 602 finding].)
[13] Rule 1392(d) provides, in pertinent part: "The hearing on a supplemental petition shall be conducted as follows: [¶] (1) The procedures relating to jurisdiction hearings ... shall apply to the determination of the allegations of the supplemental petition.... [¶] (2) The procedures relating to disposition hearings ... shall apply to the determination of disposition on a supplemental petition."
[14] The court must, of course, make the additional finding that the previous disposition has not been effective in the rehabilitation of the minor. (§ 777; rule 1392(d)(1)(B).)
[15] Referring to earlier cases holding illegally obtained evidence admissible at probation revocation (People v. Hayko, supra, 7 Cal. App.3d at pp. 609-611), and parole revocation hearings (In re Martinez, supra, 1 Cal.3d at pp. 648-651), the Supreme Court indicated that in neither case was the illegally obtained evidence the subject of a suppression motion granted pursuant to section 1538.5. (People v. Belleci, supra, 24 Cal.3d at pp. 887-888.)

Since Belleci, a Court of Appeal has held that evidence previously suppressed at a section 1538.5 hearing is inadmissible at a probation modification or revocation hearing. (People v. Zimmerman (1979) 100 Cal. App.3d 673, 675-676 [161 Cal. Rptr. 188].)
[16] For text of section 700.1, see footnote 5, ante.
[17] In recent years, there has been an increasing emphasis on the need to provide for the protection and safety of the public as a primary purpose of our juvenile court law. For example, subdivision (b) of section 202 now provides, in part: "Minors under the jurisdiction of the juvenile court as a consequence of delinquent conduct shall, in conformity with the interests of public safety and protection, receive care, treatment and guidance which is consistent with their best interest, which holds them accountable for their behavior, and which is appropriate for their circumstances. Such guidance may include punishment that is consistent with the rehabilitative objectives of this chapter. Juvenile courts and other public agencies charged with enforcing, interpreting and administering the Juvenile Court Law shall consider the safety and protection of the public and the best interest of the minor in all deliberations pursuant to this chapter."
[18] One of the leading authorities on juvenile court law has written: "Among the more commonly found statutory provisions governing disposition procedures is the one which declares that evidence at the disposition hearing must be `relevant and material,' omitting the additional requirement for evidence at the adjudication hearing that it be `competent.' The impact of this omission is to make admissible hearsay proof, the most important example of which is the predisposition study in which informants (out-of-court-declarants, in hearsay terms) provide the judge with information relevant to the disposition choice.... [¶] The exclusionary rule which makes inadmissible evidence obtained in violation of the child's constitutional rights is generally assumed to be inapplicable. The Model Act § 28, for example, declares the rule applicable at the adjudicatory hearing, implying that such evidence may not properly be used for disposition purposes." (Fox, Juvenile Courts in a Nutshell, supra, § 54, pp. 218-219, italics added.)

The State of Washington in its Juvenile Justice Act of 1977, has explicitly resolved this issue by statute: "In disposition hearings all relevant and material evidence, including oral and written reports, may be received by the court and may be relied upon to the extent of its probative value, even though such evidence may not be admissible in a hearing on the information." (§ 13.40.150, subd. (1).)
[*] See footnote, page 159, ante.