**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Gerald Duane VANDEMARK, Defendant-Appellant.**

**No. 74–2312.**

United States Court of Appeals, Ninth Circuit.

July 10, 1975.

Howard B. Frank (argued), San Diego, Cal., for defendant-appellant.

Richard E. Strauss, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

---

## OPINION

Before KOELSCH ,and WALLACE, Circuit Judges, and JAMESON,* District Judge.

WALLACE, Circuit Judge:

Vandemark was convicted of possession of 28 pounds of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The imposition of sentence was suspended and he was placed on probation for two years. Twenty-two days later, Border Patrol agents, unaware of Vandemark's status as a probationer, stopped the car he was driving, searched the trunk and found 284 pounds of marijuana. Vandemark was indicted for possession of marijuana with intent to distribute and his case was assigned to a different district court judge. He timely moved to suppress the marijuana upon the ground that his car was stopped without founded suspicion, but before the motion was heard, the government had the indictment voluntarily dismissed. Vandemark's probation officer then moved to revoke probation before the district judge who had originally granted probation. At the probation revocation hearing, Vandemark moved to strike all testimony about events subsequent to the allegedly unconstitutional stop. After hearing evidence concerning the stop and search, the district judge stated that the search was probably illegal but held that the exclusionary rule did not apply to probation revocation proceedings. He revoked probation and imposed a two-year prison term, from which Vandemark appeals. We affirm.

Vandemark first argues that evidence derived from the allegedly unconstitutional stop and search should have been excluded at the probation revocation hearing. This precise question was recently before us. We held that evidence obtained in violation of the Fourth Amendment is admissible in probation revocation proceedings if, at the time of the search, the law enforcement officers did not know or have reason to believe that the suspect was on probation. *United States v. Winsett,* 518 F.2d 51 (9th Cir. 1975). This accords with the almost unanimous view that the exclusionary rule does not usually apply in probation revocation proceedings. *United States v. Brown,* 488 F.2d 94, 95 (5th Cir. 1973) (alternate holding); *United States v. Farmer,* 512 F.2d 160, 162–63 (6th Cir. 1975); *United States v. Hill,* 447 F.2d 817, 818–19 (7th Cir. 1971) (alternate holding); *United States v. Allen,* 349 F.Supp. 749, 753–54 (N.D.Cal.1972); *United States ex rel. Lombardino v. Heyd,* 318 F.Supp. 648, 650–52 (E.D.La. 1970), *aff'd,* 438 F.2d 1027 (5th Cir.) (per curiam), *cert. denied,* 404 U.S. 880, 92 S.Ct. 195, 30 L.Ed.2d 160 (1971); *People v. Calais,* 37 Cal.App.3d 898, 904, 112 Cal. Rptr. 685, 689 (3d Dist.1974) (alternate holding); *People v. Hayko,* 7 Cal.App.3d 604, 609–11, 86 Cal.Rptr. 726, 730 (1st Dist.1970); *People v. Atencio,* Colo., 525 P.2d 461, 462–63 (1974); *Bernhardt v. State,* 288 So.2d 490, 500 (Fla.1974) (alternate holding); *Brill v. State,* 159 Fla. 682, 684–86, 32 So.2d 607, 608–10 (1947); *People v. Dowery,* 20 Ill.App.3d 738, 741–44, 312 N.E.2d 682, 684–87 (1st Dist. 1974); *State v. Caron,* Me., 334 A.2d 495, 499–500 (1975); *State v. Thorsness,* Mont., 528 P.2d 692, 695–96 (1974); *Stone v. Shea,* 113 N.H. 174, 177, 304 A.2d 647, 649 (1973); *State v. Simms,* 10 Wash.App. 75, 79–81, 516 P.2d 1088, 1091–92 (2d Div.1973) (dictum); *State v. Kuhn,* 7 Wash.App. 190, 192–95, 499 P.2d 49, 51–52 (2d Div.), *aff'd on other grounds,* 81 Wash.2d 648, 650–51, 503 P.2d 1061, 1063 (1972). *But see Michaud v. State,* 505 P.2d 1399, 1402–03 (Okl.Cr. 1973). The exclusionary rule also does not generally apply in parole revocation proceedings. *E. g., United States ex rel. Sperling v. Fitzpatrick,* 426 F.2d 1161, 1163–66 (2d Cir. 1970) (opinions of Hays, J., and Lumbard, C. J.); *In re Martinez,* 1 Cal.3d 641, 648–52, 83 Cal.Rptr. 382, 386–89, 463 P.2d 734, 738–41, *cert. de-*

---

* Honorable William J. Jameson, United States District Judge, District of Montana, sitting by designation.

*nied,* 400 U.S. 851, 91 S.Ct. 71, 27 L.Ed.2d 88 (1970). As the district judge correctly considered the evidence allegedly seized in violation of the Fourth Amendment, there was ample evidence to support the revocation of probation.

Vandemark next argues that even if the district judge may revoke probation on the basis of illegally seized evidence, he may not consider that evidence in subsequently imposing a sentence. We disagree.

The prime purpose of the exclusionary rule is to deter unlawful police conduct. "[T]he rule is a judicially-created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). The rule is not to be imposed in a vacuum nor should it be administered mechanically. It should be applied in light of its deterrent purpose. *See id.; United States v. Winsett, supra,* 518 F.2d at 53–54. Not always is justice served by applying the exclusionary rule. "As with any remedial device, the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra, supra,* 414 U.S. at 348, 94 S.Ct. at 620. Thus, unconstitutionally seized evidence may be introduced in grand jury proceedings, *id.* at 351–52, 94 S.Ct. 613; it may be used against persons other than the victim of the search, *Alderman v. United States,* 394 U.S. 165, 171–76, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); it may be introduced to impeach the credibility of a criminal defendant who testifies at trial, *Walder v. United States,* 347 U.S. 62, 65, 74 S.Ct. 354, 98 L.Ed. 503 (1954); it may be used in civil actions between private parties, *Honeycutt v. Aetna Ins. Co.,* 510 F.2d 340 (7th Cir. 1975); and it may be used to demonstrate that a probationer has violated a term of his probation, *United States v. Winsett, supra,* 518 F.2d at 55.

*United States v. Calandra, supra,* provides the analytical framework for determining whether the exclusionary rule should apply to sentencing after revocation of probation. In holding that the exclusionary rule did not apply in grand jury proceedings, the Supreme Court weighed "the potential injury to the historic role and functions of the grand jury against the potential benefits of the rule as applied in this context." 414 U.S. at 349, 94 S.Ct. at 620. Utilizing this balancing approach, we hold that extension of the exclusionary rule to sentencing subsequent to revocation of probation would have a disruptive effect far out of proportion to any incremental deterrence of police misconduct.

The detrimental effect of the exclusionary rule upon sentencing is apparent. It deprives the district judge of information necessary to effectuate the federal policy of individualized sentencing. *Williams v. New York,* 337 U.S. 241, 248, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949) (dictum). A sentence can be properly tailored to fit an individual defendant only to the extent that the judge is aware of the major facts relevant to needed correction.

A sentencing judge . . . is not confined to the narrow issue of guilt. His task within fixed statutory or constitutional limits is to determine the type and extent of punishment after the issue of guilt has been determined. Highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial.

*Id.* at 247, 69 S.Ct. at 1083 (footnote omitted). Closing the eyes of the sentencing judge to a fact as relevant as

the commission of a subsequent crime would disrupt the sentencing process. This is especially true in sentencing subsequent to revocation of probation. As the illegally seized evidence may be considered to revoke probation, the fact of the revocation itself is properly before the judge as he contemplates the sentence to be imposed. This fact would be very significant as it tends to demonstrate that the defendant had abused the court's initial trust by violating a term of probation and indicates that probation has not assisted in rehabilitation. Application of the exclusionary rule to such cases would require the sentencing judge to ignore the evidence underlying the revocation. But once the fact of revocation is before the sentencing judge, excluding the underlying evidence only creates confusion. The sentencing judge would be forced to perform the difficult task of forgetting the underlying evidence he considered when he revoked probation. Such mental gymnastics add little to the administration of justice.

Further, without considering the underlying revocation, the judge is prevented from imposing a sentence commensurate with the wrongs committed. For example, Vandemark was originally convicted of illegal possession of 28 pounds of marijuana. His probation was revoked because he possessed 284 pounds, over ten times more contraband. Application of the exclusionary rule would prevent consideration of his deepening involvement in crime. Thus, the court could not impose a proper individualized sentence.

■ By contrast, the potential benefit from extension of the exclusionary rule is slight. In order to determine the benefits relevant to our balancing inquiry, we must return to the reason for the rule. The primary justification for exclusion is not that use of evidence tainted by an unconstitutional search aggravates the original constitutional violation. Nor is the rule intended to remedy the unlawful invasion of the defendant's privacy. The Supreme Court has instead held that the prime reason for the rule is

deterrence of future unlawful police conduct. *United States v. Calandra, supra,* 414 U.S. at 347–48, 353–55, 94 S.Ct. 613. As we said in *United States v. Winsett, supra,* 518 F.2d at 53, "The judicially created remedy was designed not to compensate for the unlawful invasion of one's privacy but to deter future unlawful police conduct." This being so, the deterrent purpose of the rule is adequately served by excluding the illegally seized evidence from subsequent new criminal prosecutions. Where, as here, the officers are ignorant of the probationer's status, they also remain unaware of the possibility that he might be subject to sentencing after revocation. Consequently, the threat of exclusion at such a proceeding has little, if any, effect upon their conduct. *Id.* at 54 n. 5. Furthermore, the fact of revocation would be before the court in any case and, from the point of view of a police officer, exclusion of the evidence alone would make precious little difference.

■ .Thus, after applying the balancing approach mandated by *United States v. Calandra, supra,* 414 U.S. at 349, 94 S.Ct. 613, we conclude that the exclusionary rule should not apply to sentencing after revocation of probation. Too little deterrence would be gained for too great an impairment of the sentencing process. Furthermore, the risk of inconsistency with our decision in *United States v. Winsett, supra,* is apparent. It would be paradoxical indeed if evidence considered in revoking probation could not be considered in subsequently imposing a sentence. We avoid this anomaly and hold that evidence admissible for purposes of revocation is also admissible for subsequent sentencing.

However, Vandemark contends that we are foreclosed from this conclusion by our decision in *Verdugo v. United States,* 402 F.2d 599 (9th Cir. 1968), *cert. denied,* 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971). We disagree. Although *Verdugo* places some restrictions upon information which the sentencing judge may consider, it does not hold that evidence seized in violation of the Fourth

Amendment may never be considered in sentencing. No language in the opinion requires such a broad interpretation of the decision. On the contrary, *Verdugo* is most easily read to require exclusion only where the contrary result would provide a substantial incentive for illegal searches:

> [*Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081] may permit relaxation of the exclusionary rule when its enforcement would have no deterrent effect or the deterrent effect would be insubstantial. [Citation omitted.]
>
> Assuming this, we would nonetheless conclude that exclusion was required *in the circumstances of the present case.*

*Id.* at 611 (emphasis added).

> We conclude that where, as here, the use of illegally seized evidence at sentencing *would provide a substantial incentive for unconstitutional searches and seizures,* that evidence should be disregarded by the sentencing judge.

*Id.* at 613 (emphasis added). But, as stated above, we have concluded that, where the arresting officers did not know of the probationer's status, "the use of illegally seized evidence at sentencing [subsequent to probation revocation] would [not] provide a substantial incentive for unconstitutional searches and seizures." *Id.* A comparison of this case with *Verdugo* will emphasize our reasons.

First, the illegal search in *Verdugo* was conducted after the defendant had been charged with the sale of three grams of heroin. The search turned up 371 grams of heroin which was suppressed at trial but considered in sentencing. The search itself was blatantly illegal. Conducted without a warrant, it lasted two and one-half hours. The agents ransacked the defendant's entire house, removed light fixtures and punched holes in the wallboard. *Id.* at 609–10. By comparison, the stop of Vandemark, although alleged to be illegal, was not intrusive. Two Border Patrol agents stopped Vandemark's car, checked under the cushions in the passenger compartment for illegal aliens and asked him to open the trunk. Vandemark then fled.

Furthermore, the defendant in *Verdugo* was the object of a continuing investigation by the Federal Bureau of Narcotics. The investigation had already resulted in sufficient untainted evidence for conviction. *Id.* at 612. Our opinion expressly relied on the agents' incentive to seize evidence illegally in order to enhance the defendant's sentence.

> The incentive for the search was strong. The range of possible penalty was wide—five to twenty years. The length of Verdugo's sentence would be quite different if it could be shown that Verdugo was involved in the narcotics traffic on a large scale rather than merely as the seller in a single small transaction.

.  .  .  .  .

It might be suggested that police officers are unlikely to be concerned with the sentence ultimately imposed, and, therefore, that excluding evidence at the sentencing stage cannot serve as a substantial deterrent. But this cannot be said, even now, of "the highly specialized unit which deals with specific kinds of offenses, such as those associated with narcotics, which are very serious in nature, where the investigation task is difficult, and where offenders are likely to be recidivists. Here, there may, indeed, be a specific police objective of lengthy incarceration, since the specialized unit may consider premature release of the offender back into the community as making more difficult their job." Ohlin & Remington, Sentencing Structure: Its Effect upon Systems for the Administration of Criminal Justice, 23 Law & Contemporary Problems, 494, 501 (1958). And even if it were true that there is now no general consciousness of the potential utility of illegally seized evidence to enhance sentence, we could not ignore the fact that an-

nouncement of an exception to the exclusionary rule would inevitably produce it.

*Id.* at 612 (footnote omitted). Vandemark, on the other hand, was not under continuing investigation by the Border Patrol agents. The Border Patrol of course is specialized, but supervision of probationers is not within its area of expertise and the object of the search here was not to have a severe sentence imposed upon Vandemark but to check for illegal aliens.

Most important, in *Verdugo* we expressly distinguished searchers whose sole object is to obtain evidence of a single offense with which the defendant is charged. In the case before us, the arresting agents were unaware that Vandemark was a probationer still subject to sentencing upon revocation of probation. The object of their search could only have been to obtain evidence to support a single charge, precisely the situation we distinguished in *Verdugo*:

> Quite different considerations would apply if the object of the search were to obtain evidence to support a single charge on which the defendant was later convicted. If the additional evidence was necessary to obtain *any* conviction at all, the danger of exclusion at trial would afford a substantial deterrent to an illegal search. If the additional evidence was *not* required for conviction, both the deterrent effect of the exclusion of illegally seized evidence of the same offense at sentencing and the incentive to conduct legal searches to obtain such evidence would appear to be minimal.

*Id.* at 612 n. 21. *See United States v. Schipani,* 315 F.Supp. 253, 258–59 (E.D. N.Y.) (Weinstein, J.), *aff'd,* 435 F.2d 26 (2d Cir. 1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971). Admitting the illegally seized evidence at sentencing in this case would not, as we said in *Verdugo,* "provide a substantial incentive for unconstitutional searches and seizures . . . ." 402 F.2d at 613.

Subsequent to *Verdugo,* we have never *held* that it must be given the broad interpretation advocated by Vandemark. Indeed, until now, the question has not been presented to us. Although we have commented on the issue, we have done so only in dicta. In *United States v. Weston,* 448 F.2d 626 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972), the majority interpreted *Verdugo* to prevent any consideration of illegally seized evidence in sentencing. *Id.* at 631–32. However, the majority relied upon *Verdugo* only for the general proposition that appellate courts have power to decide that certain kinds of information may not be used in sentencing. *Id.* at 631–33. As the majority in *Weston* expressly recognized, none of the evidence in that case was illegally seized. *Id.* at 632. Hence, *Weston's* broad interpretation of *Verdugo* is dicta. In another decision we cited *Verdugo* for the proposition that "[a] sentencing court may consider evidence of other crimes committed by the defendant . . . unless the evidence was obtained in violation of a constitutional right." *United States v. Atkins,* 480 F.2d 1223, 1224 (9th Cir. 1973) (per curiam) (citations omitted). We held, however, that the district court properly considered evidence underlying a murder conviction that had been reversed on appeal. We did not imply that any evidence was illegally obtained. Therefore, *Atkins'* broad interpretation of *Verdugo* is also dicta. Finally, our decision in *Eyman v. Alford,* 448 F.2d 306, 315 (9th Cir. 1969), *vacated on other grounds,* 408 U.S. 939, 92 S.Ct. 2874, 33 L.Ed.2d 762 (1972), also distinguished *Verdugo* with the statement that the evidence used in imposing sentence was not illegally seized. *Id.* Like the other decisions, it does not require a broad reading of *Verdugo.*

Indeed, a narrow, not a broad, interpretation of *Verdugo* may be required by our most recent decision re-examining that case:

> Compare *Verdugo v. United States,* 402 F.2d 599, 612 (9th Cir. 1968), *cert.*

*denied,* 397 U.S. 925, 90 S.Ct. 931, 25 L.Ed.2d 105 (1970), in which this court applied the exclusionary rule to sentencing proceedings where the police were familiar with past narcotic violators and current suspects and had a personal stake in seeing not only that a violator was convicted, but also that he receive a lengthy sentence. The court reasoned that in the absence of the exclusionary rule an officer would have an incentive, given the proper circumstances, to lawfully obtain only so much evidence as is necessary to assure conviction of the defendant of a single offense, and then proceed to unlawfully obtain evidence of additional offenses which would ensure a long sentence.

*United States v. Winsett, supra,* 518 F.2d at 54 n. 5. As indicated earlier, in *Winsett* we refused to extend the exclusionary rule to probation revocation proceedings. We did not find *Verdugo* dispositive of that issue. We reach the same conclusion here.

Thus, we conclude that in this case *Verdugo* does not prevent the sentencing judge from considering the evidence secured in violation of the Fourth Amendment. Absent that restriction upon us, we have been sensitive to the conflicting constitutional tugs but in applying the balancing test mandated in *Calandra,* we hold that justice is better served by not extending the exclusionary rule to either probation revocation or subsequent sentencing where the searching officers are unaware of the probationer's status.

Affirmed.

KOELSCH, Circuit Judge (concurring):

I concur, albeit reluctantly. Absent this court's recent decision in *Winsett,* I would opt for a flat rule outlawing such use of illegally secured evidence. The wisdom of my choice is demonstrated, I suggest, by the considerable emphasis that the main opinion is compelled to place upon the fact that here the unlawful invasion was considerably less intrusive than the "blatantly" illegal search revealed in *Verdugo.*

Courts ought to be afforded clear guideposts whenever reasonably possible and should not be required to nicely calculate the degree of the misconduct and perhaps the motivation of the government's lawless officers.