Joel Anthony ELSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 4967.

Supreme Court of Alaska.

Feb. 18, 1983.

Christine Schleuss, Asst. Public Defender, Anchorage, Erick M. Safire, Asst. Public Defender, Kenai, Brian Shortell, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Atty. Gen., Anchorage, Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

Joel Elson was convicted and sentenced to twenty-one months for possession of cocaine in violation of former AS 17.10.010. Elson's conviction and sentence were upheld by the Court of Appeals.[1] We granted Elson's petition for hearing[2] in order to review two facets of that decision. First, the Court of Appeals' holding that evidence concerning Elson's resistance to a "pat down" search was properly admitted. Second, the holding that illegally seized evidence could be considered by the superior court in determining Elson's sentence.

### I.  Facts

On February 23, 1979, Elson was stopped by Trooper Robert Scott after Scott had clocked Elson driving 63 miles per hour in a 45 mile per hour zone.  Upon stopping Elson, Scott detected the odor of alcohol and observed that Elson's eyes were bloodshot and watery.  Scott had Elson perform several field sobriety tests after which Scott placed Elson under arrest for operating a vehicle while under the influence of alcohol. In conducting a "pat down" search of Elson for weapons, Scott felt a hard object about two inches wide and four inches long in Elson's right pants pocket.  Suspecting that it was a knife, Scott attempted to remove it

but was stopped by Elson who grabbed Scott's hand.  Scott then had Elson place his hands on the trunk of the car.  Trooper Scott thereafter reached into Elson's pocket, withdrawing a "Bic" lighter and a brown vial which was connected to an item identified by Scott as a cocaine snifter. The police tested the residue on the inside of the vial and determined that it was cocaine.  Elson was subsequently indicted for possession of cocaine.[3]

At trial on the possession charge, Elson sought a protective order to prevent the admission of any testimony regarding his attempt to stop Trooper Scott from searching his pocket.  The motion was denied and Scott was permitted to testify that Elson tried to prevent him from reaching into Elson's pocket.  In final argument the prosecution commented on Elson's refusal to submit to a search, citing it as evidence that Elson knew that he had cocaine on his person.[4]

The Court of Appeals held that the admission of Trooper Scott's testimony concerning Elson's resistance to the search did not violate his right of privacy under the federal and state constitutions[5] and that the superior court's admission of this evidence was not an abuse of discretion under Evidence Rule 403.[6]

Approximately two months prior to trial on the possession charge, Elson was arrested for assault and battery and operating a motor vehicle while under the influence of alcohol.  He was taken to the police station and placed in a restricted visitor's room. While in this room Elson ripped out several

---

1.  *Elson v. State,* 633 P.2d 292 (Alaska App. 1981).

2.  AS 22.07.030 and Appellate Rule 302(a)(1).

3.  Elson was also indicted but was later acquitted on the original OMVI charge.

4.  During final argument to the jury, the prosecutor stated:
    How do we know that he knew he had it? From the trooper's testimony, that he tried to stop the trooper from getting it.  It's that simple.  Why would he try to stop the trooper from going into his pocket if he didn't

know there was something in there that he didn't want the trooper to get?

5.  U.S. Const.Amend. 4, Alaska Const. art. 1 § 14.

6.  Alaska R.Evid. 403 provides:
    Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

telephones. Officers removed him from the room and searched him, discovering a clear zip-lock plastic bag containing a white powder. After obtaining a search warrant, the police seized the powder and sent it to the crime lab for testing, which indicated that the substance was cocaine.[7]

At the sentencing hearing following Elson's conviction on the original cocaine possession charge, the state introduced evidence of the police station discovery of cocaine. Elson moved for an evidentiary hearing to determine whether the bag of cocaine had been illegally seized.[8] The superior court denied Elson's motion, admitted the evidence of Elson's subsequent cocaine possession, and specifically stated that it had considered this evidence in determining Elson's sentence. In denying Elson's motion, the superior court made no specific ruling on the legality of the search and seizure which occurred at the police station; the Court of Appeals assumed, in the absence of a superior court finding, that the evidence was illegally seized. The Court of Appeals held that the superior court's consideration of illegally seized evidence for purposes of sentencing was not improper.

## II. *Admissibility of Elson's Refusal to Consent to the Search*

On two prior occasions, we have held that evidence of a defendant's refusal to consent to a search is not admissible at trial in circumstances where the search would be illegal if conducted without the defendant's permission. *Padgett v. State,* 590 P.2d 432, 434 (Alaska 1979); *Bargas v. State,* 489 P.2d 130, 133 (Alaska 1971). *Bargas* involved a suspected drug dealer who was stopped by a police officer and asked to submit to a voluntary search. The defend-

ant refused and then ran away from the officer. In holding that the admission of testimony regarding the defendant's refusal to consent to search and subsequent flight was a violation of the defendant's fourth amendment rights, we stated:

> What this case is all about is that appellant's assertion of his constitutional right not to have his privacy invaded without just cause was used against him to help establish guilt of the crime for which he was indicted. This is entirely impermissible. It would make meaningless the constitutional protection against unreasonable searches and seizures if the exercise of that right were allowed to become a badge of guilt.

*Bargas,* 489 P.2d at 132. An analogy was drawn to United States Supreme Court cases which hold that a defendant's assertion of his fifth amendment right to remain silent may not be used against him at trial.[9]

> A like principle applies here. One's assertion of his constitutional right not to submit to a search of his person cannot be used as evidence of guilt if this constitutional right is to have any meaning.

*Id.,* at 133.

In *Padgett,* the police impounded the defendant's auto and asked if he would consent to a search of the car without a warrant. Initially the defendant limited his consent to a search of the back of the car, but later he agreed to a search of the entire car. In ruling that the admission and use of testimony regarding the defendant's initial refusal to consent to a full search of the car constituted "plain error," we reasoned:

> Padgett had a right under the fourth amendment to the Federal Constitution, and article I, section 14 of the state constitution, to refuse to consent to a search

7. There is no indication in the record that any criminal charges were filed in regard to the cocaine which was discovered on Elson's person at the police station.

8. Elson argued that the seizure of this evidence was improper under *Zehrung v. State,* 569 P.2d 189, 193 (Alaska 1977), *modified,* 573 P.2d 858 (1978), in which we held "a warrantless jailhouse inventory is without justification when an arrestee is not going to be incarcerated, and

... is therefore constitutionally impermissible." The state argued that the search was valid since the police intended to incarcerate Elson on a malicious destruction of property charge, and Elson was unable to post bail immediately.

9. *Doyle v. Ohio,* 426 U.S. 610, 617–19, 96 S.Ct. 2240, 2244–45, 49 L.Ed.2d 91, 97–99 (1976); *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965).

of all or part of his car. That right would be effectively destroyed if, when exercised, it could be used as evidence of guilt.

*Padgett,* 590 P.2d at 434. *Bargas* and *Padgett* are based on the premise that permitting the jury to draw an inference of guilt from a refusal to consent to a search would impose a prohibitive cost upon an individual's assertion of his constitutional rights.

Elson argues that the rule of *Bargas* and *Padgett* should be extended to bar the introduction of testimony regarding his refusal to submit to the search even though the search would have been lawful without his consent.[10] The state's argument, which the Court of Appeals accepted, is that the exclusionary rule enunciated in those cases is inapplicable where, as in this case, the contested search was lawful.[11] In essence, the Court of Appeals held that when a person objects to what is later determined to be a constitutionally permissible search, that objection may be admissible at trial as evidence of the person's guilt. While we agree that *Bargas* and *Padgett* are not controlling here, we disagree with the rationale advanced by the Court of Appeals.

*Bargas* and *Padgett* focused on the individual's constitutional right not to consent to a search of his person or property. We were primarily concerned with the likelihood that the admission of a refusal to consent to a search would serve to deter people from asserting their constitutional rights. We recognized that the constitutional right to refuse to consent to an unlawful search "would be effectively destroyed if, when exercised, it could be used as evidence of guilt." *Padgett,* 590 P.2d at

434. Since the searches in those cases would have been illegal absent consent, we were not required to rule on the admissibility of a refusal to consent to a lawful search. However, in the case at bar, since the nonconsensual search of Elson's pocket was legal, we must address this issue. We conclude that the rationale of *Bargas* and *Padgett* applies with equal force to lawful searches.

In our view, the crucial question is not whether a search is illegal, but rather whether the admission of a refusal to consent to a search, legal or illegal, will inhibit the exercise of fourth amendment rights. The contrary position advocated by the state, in which the admissibility of the refusal would turn on the legality of the search, places an individual facing a police request to search in a difficult dilemma. As Elson points out, the legality of a search is often determined long after the fact, and thus a person who is asked to consent to a search would not know whether he is protecting or prejudicing himself by choosing not to consent.[12] If the person consents, the fruits of the search would be admissible regardless of whether the police had the right to search without consent. If the person believes the search is impermissible and withholds his consent, he risks having his refusal considered as an admission of guilt if it is later ascertained that the nonconsensual search was permissible. An individual in this situation would have to balance a desire to assert his perceived fourth amendment rights against the risk of self-incrimination. This tension is magnified by the fact that in deciding whether to consent to a search, the individual is

---

**10.** At no point in the proceeding has Elson raised any challenge to the legality of the "pat down" search incident to the arrest for OMVI.

**11.** In rejecting Elson's argument, the Court of Appeals stated:

We find that *Bargas* and *Padgett* do not apply to the facts of Elson's case. It is uncontested that Trooper Scott's actions were proper in searching Elson for weapons incident to the arrest for operating a motor vehicle under the influence of alcohol. Elson's resistance to the search cannot therefore be

construed as the exercise of a constitutional right to resist an unlawful search.

*Elson v. State,* 633 P.2d at 297.

**12.** It is now conceded that Trooper Scott's arrest and search of Elson were permissible. At the time he was arrested, however, Elson would have had no way of knowing whether the arrest and search were proper. Uncertainty exists even in situations where the police are acting pursuant to a search warrant. An individual presented with a warrant has no way of knowing whether the warrant (and therefore the search) is valid.

usually acting without the benefit of counsel's advice as to the legality of the police conduct and the possible success of fourth amendment objections. In our view, the analysis adopted by the Court of Appeals would penalize individuals for their ignorance of the arcane intricacies of search and seizure law by allowing mistaken assertions of perceived fourth amendment rights to be used as evidence of guilt.

We recognize that some courts have held that a defendant's refusal to provide "non-testimonial" evidence (fingerprints, writing sample, breath sample) is admissible at trial.[13] The general rationale adopted by these cases is that the defendant has no fifth amendment right to refuse to cooperate or to submit to the tests, thus the admission of the defendant's refusal does not infringe on the privilege against compelled self-incrimination. The defendant's refusal to consent is seen not as a testimonial communication but rather as conduct which is circumstantial evidence of his consciousness of guilt. *People v. Ellis,* 65 Cal.2d 529, 55 Cal.Rptr. 385, 421 P.2d 393, 397–98 (Cal.1966). Whatever the merits of this line of reasoning,[14] we think it is inapplicable to cases where the defendant refuses to consent to a search which he mistakenly believes to be illegal. It is settled that a defendant has no federal constitutional right to refuse to provide evidence of his physical traits. The admission of the defendant's refusal in one case will not inhibit his future assertion of his fifth amendment rights since by definition the defendant will never have the right to refuse to provide this evidence. In contrast, the admission of an individual's refusal to consent to a legal search in one case may inhibit individuals from exercising the right to refuse consent to some future illegal search.[15] We therefore hold that evidence of a refusal to consent to a search is inadmissible regardless of the legality of the search.

### III. Admissibility of Elson's Resistance to the Search

In this case, however, we are not dealing with a mere refusal to grant consent to a search. The challenged testimony related to Elson's attempt to prevent the officer from searching his pocket. We must therefore consider the question whether there is a constitutional right to physically resist a search. This question of first impression is in many ways analogous to the question whether there is a right to forcibly resist an arrest.

---

13. *Higgins v. Wainwright,* 424 F.2d 177 (5th Cir.1970), *cert. denied,* 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970) (refusal to speak for identification purposes during lineup); *Newhouse v. Misterly,* 415 F.2d 514 (9th Cir.1969), *cert. denied,* 397 U.S. 966, 90 S.Ct. 1001, 25 L.Ed.2d 258 (1970) (refusal to take blood alcohol test); *People v. Sudduth,* 65 Cal.2d 543, 55 Cal.Rptr. 393, 421 P.2d 401 (Cal.1966), *cert. denied,* 389 U.S. 850, 88 S.Ct. 43, 19 L.Ed.2d 119 (1967) (refusal to take breathalyzer test). *But cf., State v. Andrews,* 297 Minn. 260, 212 N.W.2d 863 (Minn.1973), *cert. denied,* 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974) (admission of refusal to submit to blood alcohol test violates privilege against self-incrimination); *State v. Neville,* 312 N.W.2d 723 (S.D.1981), *U.S. app. pndg.* (admission of refusal to take blood test violates privilege against self-incrimination); Note, *Constitutional Limitations on the Taking of Body Evidence,* 78 Yale L.J. 1074, 1084 (1969).

14. We express no opinion as to the merits of these arguments or as to how we would resolve the self-incrimination issues presented in those cases.

15. The state argues that the exclusionary rule, which prohibits the admission of illegally seized evidence, was intended solely to deter illegal police conduct. Where the officer's actions are lawful the state asserts that no legitimate purpose would be served by excluding evidence of the individual's refusal. The state's argument on this point is misdirected since it fails to consider the indirect results of the admission of this evidence. By increasing the risks associated with the assertion of constitutional rights, the chances that individuals will consent to and thereby validate what would otherwise be illegal police conduct are heightened. In addition, adoption of the state's position would create opportunities for abuse since in the future police might seek permission to search, even if they know consent is not required, in an effort to bait a defendant into incriminating himself by refusing consent. The defendant in that position would face a potential no-win situation. By refusing, he incriminates himself; by consenting, he waives any later objection to the legality of the police action.

In *Miller v. State,* 462 P.2d 421, 427 (Alaska 1969), we held that a private citizen may not use force to resist a peaceful arrest regardless of whether the arrest is illegal. Rejecting the common law rule which permitted the use of reasonable force to resist an unlawful arrest, we stated:

> We feel that the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask that one believing himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court. Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an arrest, as well as to minimize harm to innocent bystanders.[16]

We reasoned that if a right to resist a peaceful arrest forcibly was recognized, it would inevitably increase the danger of escalating violence between the officer and the arrestee. *Miller,* 462 P.2d at 426. In addition, we noted that the common law rule of self-help was developed in a time when the procedural safeguards which exist today were unknown. *Id.* Several courts have applied a similar analysis to cases involving physical resistance to a search.

In *United States v. Ferrone,* 438 F.2d 381, 390 (3rd Cir.1971), *cert. denied,* 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971), the court held that an individual has no right to resist the execution of a search warrant even where the warrant is subsequently found to be invalid.

> Society has an interest in securing for its members the right to be free from unreasonable searches and seizures. Society also has an interest, however, in the orderly settlement of disputes between citizens and their government; it has an especially strong interest in minimizing the use of violent self-help in the resolution of those disputes. We think a proper accommodation of those interests requires that a person claiming to be aggrieved by a search conducted by a peace officer pursuant to an allegedly invalid warrant test that claim in a court of law and not forcibly resist the execution of the warrant at the place of search.

*United States v. Ferrone,* 438 F.2d at 390.

Similarly, the New Mexico Supreme Court has stated:

> Self-help measures undertaken by a potential defendant who objects to the legality of the search can lead to violence and serious physical injury. The societal interest in the orderly settlement of disputes between citizens and their government outweighs any individual interest in resisting a questionable search.... One can reasonably be asked to submit peaceably and to take recourse in his legal remedies.
>
> We hold that a private citizen may not use force to resist a search by an authorized police officer engaged in the performance of his duties whether or not the arrest is illegal.[17]

■ We agree with these courts and conclude that the rule we adopted in *Miller* is applicable to cases involving physical resistance to a search by the police. Thus, we hold that a private citizen may not use force to resist a peaceful search by one he knows or has good reason to believe is an authorized police officer performing his duties, regardless of whether the search is ultimately determined to be illegal.[18]

---

**16.** *Miller,* 462 P.2d at 427; *see also, United States v. Walker,* 409 F.2d 477 (9th Cir.1969); *United States ex rel. Kilheffer v. Plowfield,* 409 F.Supp. 677 (E.D.Pa.1976); *State v. Koonce,* 89 N.J.Super. 169, 214 A.2d 428 (N.J.Ct.App. 1965); *City of Columbus v. Fraley,* 41 Ohio St.2d 173, 324 N.E.2d 735 (Ohio 1975), *cert. denied,* 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975).

**17.** *State v. Doe,* 92 N.M. 100, 583 P.2d 464, 466–67 (N.M.1978) (citations omitted). *See*

*also, State v. Hatton,* 116 Ariz. 142, 568 P.2d 1040, 1045–46 (Ariz.1977).

**18.** We again caution that this rule does not apply when the officer uses excessive or unnecessary force in conducting the search or when the search is attempted by one not known to be or not reasonably identifiable as a peace officer. *See Gray v. State,* 463 P.2d 897, 908 (Alaska 1970); *Miller,* 462 P.2d at 427 n. 4.

■ Applying this standard to this case, we conclude that Elson had no right to resist physically the pat down search by the officer. The evidence shows that Elson was under arrest by a uniformed police officer and there is no indication that the officer used unreasonable force in conducting the pat down search. Therefore, the admission of testimony concerning Elson's resistance did not violate his constitutional rights.

■ Elson next argues the evidence of his resistance should have been excluded because its probative value was outweighed by the danger of unfair prejudice.[19] He asserts that his refusal to submit should not have been presented to the jury as evidence of guilt because he was merely attempting to exercise what he believed to be his constitutional right to resist an unauthorized government intrusion. Since there was an alternative explanation for his resistance, Elson contends that it was an abuse of discretion to admit the resistance as evidence of guilt. The state argues that Elson's attempt to prevent the search was conduct indicating his knowledge of the cocaine and that it presented no danger of unfair prejudice since it was not the type of evidence which would inflame the jury or lead to a decision on some improper basis.[20] The Court of Appeals found that Elson's resistance to the search was relevant as an admission by conduct of his awareness of the cocaine.[21] While recognizing that there were other possible explanations for Elson's behavior, the Court of Appeals concluded that the admission of the evidence was within the discretion of the trial judge.

In *Watson v. State,* 387 P.2d 289, 291 (Alaska 1963), we held that testimony regarding a defendant's silence in the face of an accusatory statement is inadmissible in situations where the defendant's silence is equally consistent with a state of mind other than acquiescence in the truth of what was said. This limitation was based, however, on the inherent weakness of the correlation between guilt and mere silence. *Blue v. State,* 558 P.2d 636, 645 n. 21 (Alaska 1977). We reject Elson's argument that this limitation should be extended to this case.

Elson's attempt to prevent a search of his pocket was an affirmative act which could reasonably be interpreted as an indication that he had something to hide. While hardly dispositive, Elson's resistance does have some tendency to show that he was aware of the cocaine in his pocket.[22] We agree with the Court of Appeals that any alternative explanations for Elson's conduct go to the weight rather than the admissibility of the evidence. We therefore affirm the Court of Appeal's ruling that the admission

**19.** Alaska R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

This rule was not in effect at the time of trial. The commentary to the rule indicates, however, that it merely codifies the court's discretion under the common law.

**20.** The commentary to Alaska R.Evid. 403 provides in part:

"Unfair prejudice" within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.

**21.** The conduct or demeanor of an accused at the time of arrest, which indicates a consciousness of guilt, has been held to be admissible as

an implied admission. *People v. Cramer,* 67 Cal.2d 127, 60 Cal.Rptr. 230, 429 P.2d 582 (Cal. 1967); *State v. Lee,* 201 Kan. 177, 440 P.2d 562 (Kan.1968); *Commonwealth v. Montecalvo,* 367 Mass. 46, 323 N.E.2d 888 (Mass.1975). Examples of these admissions by conduct include resisting arrest, attempting to escape, assuming a disguise or alias and fleeing from the scene of the crime. McCormick, Law of Evidence § 271, at 655 (2d ed. 1972). We have expressed serious doubt, however, as to the relevancy of evidence of flight to the issue of guilt. *See Bargas v. State,* 489 P.2d at 133.

**22.** To be relevant, evidence must have some tendency to make the existence of a proposition more or less probable than it would be without the evidence. Alaska R.Evid. 401. *See Hawley v. State,* 614 P.2d 1349 (Alaska 1980); *Newsom v. State,* 533 P.2d 904 (Alaska 1975).

of testimony about Elson's resistance to the search was not an abuse of discretion.[23]

## IV. *Admissibility of Illegally Seized Evidence at the Sentencing Hearing.*

■ The Court of Appeals held that under the United States and Alaska constitutions the sentencing court could properly consider illegally seized evidence in determining Elson's sentence.[24]

> We conclude that where the illegally seized evidence is reliable, where the police conduct involved in obtaining the evidence does not shock the conscience of the court, and where it is clear that the evidence was not obtained for purposes of influencing the sentencing judge, illegally seized evidence may be considered in fashioning a sentence.

*Elson v. State,* 633 P.2d at 300. While the admissibility of illegal evidence at sentencing is a question of first impression in Alaska, this court has previously held that such evidence could be used in a probation revocation proceeding. *State v. Sears,* 553 P.2d 907 (Alaska 1976). In refusing to apply the exclusionary rule to probation hearings, we stated:

> This court must answer the question whether extension of the exclusionary rule to probation revocation hearings would further the goal of deterrence (of unlawful methods of law enforcement) sufficiently to outweigh the need for use of the evidence thus secured to promote the enforcement of a rational probation system. Theoretically, any time illegally seized evidence is excluded, the deterrent impact of the exclusionary rule as pres-

ently administered is incremented. However, invocation of the exclusionary rule in probation revocation proceedings would yield only a minimal additional deterrent effect which is outweighed by the needs of our probation system.

*Id.* at 912. We think this analysis is applicable here and conclude that the needs of the judicial system in sentencing proceedings outweigh the possible benefits of applying the exclusionary rule.

This court has recognized that the strong public interest in the imposition of a proper sentence makes it essential that a sentencing judge have broad access to relevant information concerning the defendant. *Nukapigak v. State,* 576 P.2d 982 (Alaska 1978). In so ruling, we cited *Williams v. New York,* 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337, 1342 (1948), in which the Supreme Court stated:

> Highly relevant—if not essential—to [a trial judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to [a] trial.

*Id.* 337 U.S. at 247, 69 S.Ct. at 1083, 93 L.Ed. at 1342. The potentially harmful effect of the exclusionary rule on the sentencing process is apparent. It may deprive the

---

**23.** In most cases after considering whether the evidence is relevant, we would then assess and balance the probability of unfair prejudice. In this case, however, Elson's claim of prejudice really collapses into his claim that the evidence lacked sufficient probative value to be considered relevant. Elson has made no claim or showing that the evidence was inflammatory or that it would be put to some improper use.

**24.** Initially, the Court of Appeals held that the Alaska Rules of Evidence do not require the exclusion of illegally seized evidence at sentencing.

> Although [Evidence] Rule 412, in effect at the time of Elson's sentencing, provides that illegally obtained evidence shall not be used over proper objection by the defendant in a criminal prosecution for any purpose ..., [Evidence] Rule 101(c)(2) provides specifically that the evidence rules "do not apply to proceedings related to ... sentencing, probation or parole."

*Elson v. State,* 633 P.2d at 300. Elson has not raised any challenge to this aspect of the Court of Appeals' decision. Elson argues instead that the constitutional exclusionary rule should be applied to bar admission of illegally seized evidence at sentencing.

superior court of access to reliable [25] information which would be relevant to the judge's formulation of an appropriate sentence. *United States v. Vandemark,* 522 F.2d 1019 (9th Cir.1975); *State v. Campbell,* 43 Or.App. 979, 607 P.2d 745 (Or.App.1979). In addition, there is the possibility that sentencing proceedings may be delayed and disrupted if it is necessary to determine the legality of every piece of information presented to the judge. *United States v. Lee,* 540 F.2d 1205, 1211 (4th Cir.1976) *cert. denied,* 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976). Against this potential damage to the proper functioning of the sentencing court, we must evaluate and balance the degree of deterrence which might be produced by suppression of such evidence.

When faced with this question, the Court of Appeals for the Fourth Circuit stated:

We think that if the exclusionary rule were extended to sentencing in the ordinary case, its additional deterrent effect would be so minimal as to be insignificant. Generally, law enforcement officers conduct searches and seize evidence for purposes of prosecution and conviction—not for the purpose of increasing a sentence in a prosecution already pending or one not yet begun. If they are to be deterred from official lawlessness, it would seem obvious that the only effective deterrence is the threat that the prosecution arising out of the specific search and seizure in which they acted illegally would be rendered ineffective. The additional threat that a future sentence might be less severe because they acted unlawfully can be predicted to have little practical effect to accomplish its main objective.

*United States v. Lee,* 540 F.2d at 1211. A similar conclusion was reached by the Second Circuit in *United States v. Schipani,* 435 F.2d 26, 28 (2d Cir.1970), *cert. denied,* 401 U.S. 983, 91 S.Ct. 1198, 28 L.Ed.2d 334 (1971):

We believe that applying the exclusionary rule for a second time at sentencing after having already applied it once at the trial itself would not add in any significant way to the deterrent effect of the rule. It is quite unlikely that law enforcement officials conduct illegal [searches] to build up an inventory of information for sentencing purposes, although the evidence would be inadmissible on the issue of guilt.

On the other hand, several courts have recognized that the determination of the deterrent impact of the exclusion of illegal evidence in a sentencing hearing presents a difficult question. In *State v. Banks,* 157 N.J.Super. 442, 384 A.2d 1164 (N.J.Super.Ct. Law Div.1978), the court stated:

Law enforcement officers are not likely to seize evidence unlawfully for the sole purpose of affecting a defendant's sentence. Usually the suppression of such evidence destroys the State's case so there is no sentence to affect. Two exceptions come to mind: (1) where police are assembling a dossier to be offered to a sentencing judge should the subject ever be convicted of an offense, and (2) where police have accumulated sufficient evidence to convict and then seize additional evidence unlawfully solely to affect the sentence.

*Id.* 384 A.2d at 1169. As the Ninth Circuit observed in *Verdugo v. United States,* 402 F.2d 599, 612 (9th Cir.1968), *cert. denied,* 402 U.S. 961, 91 S.Ct. 1623, 29 L.Ed.2d 124 (1971):

It might be suggested that police officers are unlikely to be concerned with the sentence ultimately imposed, and, therefore, that excluding evidence at the sentencing stage cannot serve as a substantial deterrent. But this cannot be said, even now, of "the highly specialized unit which deals with specific kinds of offenses, ...". [E]ven if it were true that there is now no general consciousness of the potential utility of illegally seized evi-

---

**25.** As the Court of Appeals noted, illegal evidence is suppressed not because it is untrustworthy (it is often highly reliable and proba-

tive), but rather because it was obtained through an unconstitutional invasion of the defendant's rights.

dence to enhance sentence, we could not ignore the fact that announcement of an exception to the exclusionary rule would inevitably produce it.

These courts recognized that in certain situations the exclusion of illegal evidence may have a significant deterrent effect and that the adoption of a blanket exception to the exclusionary rule would provide a new incentive for illegal police conduct.[26] Even those courts which have allowed the admission of illegal evidence at sentencing have indicated that the exclusionary rule should be applied where the facts indicate that the police acted with a view toward enhancing the defendant's sentence.[27]

After reviewing these various policy considerations, we conclude that the Court of Appeals, in declining to apply the exclusionary rule in this case, struck a proper balance between the interests of the judicial system in sentencing and the purposes of the exclusionary rule. Under the test set out by the Court of Appeals, the illegal evidence is admissible only where it is clear that the evidence was not obtained for purposes of influencing the sentencing judge. *Elson*, 633 P.2d at 300. We agree that

where the sole objective in seizing evidence in good faith, but contrary to the dictates of the fourth amendment, is to obtain a criminal conviction, the fact that such evidence is suppressible at trial is sufficient to satisfy the deterrent policy behind the exclusionary rule.[28]

In the case at bar, Elson has not argued that the police action was in any way taken for the purpose of enhancing his sentence. The record indicates that the search of Elson was instituted only after he ripped out the telephones in the visitor's room of the station house and the police were forced to restrain him. Prior to this, the police had not conducted any search and there is no evidence that Elson's second arrest for OMVI was motivated by a desire to obtain incriminating evidence against Elson.

Elson further argues that the rationale of judicial integrity dictates that the exclusionary rule should be applied to bar the introduction of illegal evidence at sentencing. Under this rationale, the exclusion of illegal evidence preserves the judicial integrity of the legal system by insuring that the court is not made a party to the lawless invasion of a citizen's constitutional right.[29]

---

26. *Cf.* Allen, *Federalism and the Fourth Amendment: A Requiem for* Wolf, The Supreme Court Review 1, 36 (1961):
   Some states sought to avoid the heavy costs involved in complete acceptance or rejection of the exclusionary rule by holding the rule applicable only to certain categories of offenses. The consequences were predictable. The police, being of a pragmatic turn, tended to interpret the withdrawal of the rule in given offense categories as a license to proceed in those areas without legal restraint. (Footnotes omitted.)

27. *United States v. Lee,* 540 F.2d at 1212; *United States v. Vandemark,* 522 F.2d at 1022–1025; *United States v. Schipani,* 435 F.2d at 28; *State v. Banks,* 157 N.J.Super. 442, 384 A.2d 1164, 1169 (Super.Ct.N.J.1978); *State v. Swartz,* 278 N.W.2d 22, 26 (Iowa 1979).

28. In *State v. Sears,* 553 P.2d at 914, we stated:
   In the event the lawless arrest and search or seizure is carried out by enforcement personnel with knowledge or reason to believe the suspect was a probationer, we would then apply the exclusionary rule in the probation revocation proceeding. For, in such a circumstance, the bar of the exclusionary rule would act as a significant deterrent to

searches and arrests consciously directed toward probationers.
*See also, United States v. Winsett,* 518 F.2d 51, 54 n. 5 (9th Cir.1975).
   We think that the same result would be required where the police at the time of the illegal search or seizure were aware that the suspect was facing trial or sentencing on other charges. In such a circumstance, the police would have a significant incentive to carry out an illegal search since even if the evidence were suppressed at trial it might be admissible against the defendant at sentencing.

29. Recent Supreme Court cases have tended to focus primarily on deterrence as the rationale for the exclusionary rule. *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). As a result of this emphasis on deterrence as the determinative factor in the application of the exclusionary rule, courts considering whether to exclude illegal evidence from sentencing have focused almost exclusively on whether it would provide any significant measure of deterrence. *See, United States v. Schipani,* 435 F.2d at 28; *State v. Campbell,* 607 P.2d at 748–50.

*Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Sears,* 553 P.2d at 912. This court, however, has not adopted the position that the integrity of the judicial process requires that illegal evidence be held inadmissible for all purposes. *Compare, State v. Sears,* 553 P.2d at 913 *with Id.* at 915–19 (Connor, J., dissenting). In *Sears,* we held that the judicial integrity rationale would be implicated only in cases of gross police misconduct.

> We can conceive of circumstances which would lead to the application of the exclusionary rule to revocation of probation proceedings.... In short, police misconduct which shocks the conscience, or is of a nature that calls for the judiciary, as a matter of judicial integrity, to disassociate itself from benefits derivable therefrom, would lead us to invoke the exclusionary rule.

*Sears,* 553 P.2d at 914.

We think that the Court of Appeals' approach is consistent with our position in *Sears* in that it provides for the exclusion of evidence obtained as a result of gross police misconduct. The Court of Appeals ruled that there was no evidence in the record of gross misconduct by the police which would necessitate the application of the exclusionary rule at Elson's sentencing hearing. This ruling is affirmed.

In summary, we conclude that where the state [30] is able to prove (1) that the illegal evidence is reliable, (2) that the police did not obtain the evidence as a result of gross or shocking misconduct, and (3) that the evidence was not obtained for purposes of influencing the sentencing court, the illegally seized evidence may be considered by the sentencing court in fashioning a defendant's sentence.[31]

**30.** The Court of Appeals did not indicate which party bears the burden of proof as to the requirements for the admission of illegal evidence at sentencing. We think that the burden of proof is properly allocated to the state since it seeks to obtain the use of evidence which was obtained in violation of the defendant's constitutional rights.

**31.** One additional comment is warranted. Our decision in this case is based in part on the assumption that the incidence of admissions of illegal evidence at sentencings is extremely

For the reasons expressed, Elson's conviction is AFFIRMED.

CONNOR, J., not participating.

COMPTON, Justice (concurring in part, dissenting in part).

I disagree with the court's holding that evidence of resisting a search is admissible for purposes of establishing guilt. It is one thing to say that a person has no constitutional right to "use force to resist a peaceful search by one he knows or has good reason to believe is an authorized police officer performing his duties, regardless of whether the search is ultimately determined to be illegal." Maj. at 1200. It is quite another thing to say that evidence of resistance may be used as establishing guilt.

The court's opinion loses sight of the nature of Elson's resistance. Elson's resistance was not violent like the resistance in *Miller v. State,* 462 P.2d 421 (Alaska 1969), the case relied on by the court. In that case, the police officer stopped Miller's car and informed him and his companion that they were under arrest. Miller got out of his car, but then became argumentative and, after a "scuffle," returned to his car. After the officer forcibly removed Miller from the car, Miller began wielding a bayonet, slashing at the officer and even threatening to harm his companion. *Id.* at 423. One reason behind our holding in *Miller* that there is no constitutional right to resist an arrest was our belief that "[s]uch a rule helps to relieve the threat of physical harm to officers ... as well as to minimize harm to innocent bystanders." *Id.* at 427.

low. We are mindful, however, of the danger that the announcement of this exception to the exclusionary rule may create or increase police awareness of the potential utility of illegally seized evidence in sentencing proceedings. Thus, we think it advisable to caution that our holding is subject to reconsideration in the event of a significant increase in the use of illegally seized evidence in sentencing hearings. *Cf. State v. Sundberg,* 611 P.2d 44, 52 (Alaska 1980).

This rationale does not apply to Elson's nonviolent resistance.[1] Unlike Miller, Elson did not attempt to harm the officer or otherwise resist more than what was reasonably necessary to indicate his objection to the search. After Elson grabbed the officer's wrist, the officer placed Elson's hands on top of the patrol car. Elson did not try to resist any further, attempt an escape, or in any other way jeopardize the safety of the officer or the public. It is highly unlikely that Elson's actions placed the officer in apprehension of physical harm.[2]

Elson's nonviolent physical resistance was no more than an assertion of his mistaken belief that he had a right not to be searched. If his assertion had been verbal it would not have been admissible as evidence of guilt. Maj. op. at 1199. Thus, Elson is being penalized for his failure to distinguish between verbal and physical assertions of nonconsent. Such a distinction is categorically unfair in this case. Elson had no opportunity to verbally express his refusal to be searched because the officer did not ask whether Elson would consent to being searched. Instead, Elson's first indication that he was being searched was when the officer began to put his hand into Elson's pocket. Given the stressful circumstances, Elson cannot be faulted for reacting in a rapid and reflexive manner to this intrusion on his person. It is unreasonable to expect Elson to pause, assess the situation, and realize that it would be less detrimental in the long run to speak out rather than reach out, or at least to reach toward but not touch the officer.

The court's opinion states that individuals should not be penalized "for their ignorance of the arcane intricacies of search and seizure law by allowing mistaken assertions of perceived fourth amendment rights to be used as evidence of guilt." Maj. at 1199. By allowing non-verbal assertions of perceived rights to be used as evidence of guilt,

the court adds to the arcane intricacies of search and seizure law and penalizes individuals for their ignorance of the correct way to express their mistaken assertions.

I recognize that we cannot encourage violent resistance to police officers; however, adequate incentives for cooperation with the police are already present because individuals are subject to criminal penalties for resisting or interfering with an arrest. *See* AS 11.56.700. Given this incentive, it seems unnecessary to add the additional incentive that non-verbal resistance, no matter how inoffensively exhibited, can be used as evidence of guilt.

I join the court's disposition of all other issues in the petition for hearing.

1. Because this case involves a nonviolent resistance to a search, I do not discuss whether evidence of a violent resistance would be admissible to establish guilt.

2. I note that a verbal refusal could be expressed in a tone that would place the officer in great apprehension of immediate physical harm.