Archie **NAPAGEAK,** Appellant,

v.

**STATE** of Alaska, Appellee.

No. A–1447.

Court of Appeals of Alaska.

Dec. 26, 1986.

Mary P. Treiber, Asst. Public Defender, Barrow, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Archie Napageak was convicted of assault in the third degree in violation of AS 11.41.220(a)(1). The record reflects that Napageak's victim was a public safety officer whom Napageak chased from his home while brandishing a whale gun.[1]

Napageak appeals, alleging that the public safety officer entered his home illegally in violation of his rights under the state and federal constitutions and therefore the assault and any evidence of the assault, including the observations of the officer and other bystanders, was a fruit of the illegal entry which must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (evidence obtained through exploitation of a violation of constitutional rights must be suppressed). Napageak asked for dismissal of the indictment and in the alternative sup-

---

1. The trial court's fact findings, which are not disputed on appeal, describe the event as follows:

On June 27, 1985, Public Safety Officer Kathy Johnson at approximately 9:00 a.m. received a call from a citizen in Nuiqsut indicating the defendant was possibly intoxicated and driving his father's yellow station wagon. Officer Johnson contacted the defendant on 3rd Avenue and observed that he obviously had been drinking but was still somewhat in control of himself. Defendant consented to leave his car on 3rd Avenue and be taken home and have someone pick up the car. On arrival at the Napageak residence, Rita Napageak was in the front yard starting a three wheeler. Ms. Napageak pointed at the defendant and laughed at him. Public Safety Officer Johnson gave the keys to the car to Ms. Napageak who stated that she didn't drive but would have some other family member go pick up the car.

The defendant grabbed the keys from Ms. Napageak and started running into the house. Before the [defendant went] into the house the defendant lost all control and screamed and yelled that no one was going to drive his car and continued to yell at the top of his lungs [that] no one could take his car and that he would go get it himself. Public Safety Officer Johnson followed the defendant into the house in an attempt to calm him down since she was concerned he might attempt to drive the vehicle while he was still somewhat intoxicated.

After the defendant went into the house he went into a bedroom and closed the door. Public Safety Officer Johnson knocked on the door and opened it after several knocks and requests for defendant to come out and talk[;] after which the defendant pointed a large caliber weapon at Public Safety Officer Johnson. The defendant stated that he was going to blow Public Safety Officer Johnson's head off. Public Safety Officer Johnson began moving towards the outside door of the residence followed by the defendant who followed her to the porch area of the residence continuing to point the weapon at her as she got into her vehicle outside of the residence. Two other individuals outside of the residence on the street observed the defendant point the weapon at Public Safety Officer Johnson outside of the residence.

Officer Johnson learned that the large caliber weapon was the type of gun used for whaling.

pression of all of the state's evidence. We affirm.

This case is controlled by *Elson v. State*, 659 P.2d 1195, 1199–1202 (Alaska 1983). In *Elson*, the supreme court held that evidence of forcible resistance to a search whether legal or illegal is admissible in evidence without violating the resisting parties' constitutional rights. The court reasoned that there is no right to resist a peaceable search, even if the search is illegal, where the person subject to the search knows that it is being conducted by a peace officer and the search does not involve excessive violence. *See Brown v. Anchorage*, 680 P.2d 100, 103–04 (Alaska App.1984). It is undisputed in this case that Napageak knew he was dealing with a peace officer and that she did not violently assault him. *Cf., Miller v. State*, 462 P.2d 421, 427 (Alaska 1969) (no right to resist unlawful arrest by a known police officer in the absence of excessive force). Since Napageak had no right to forcibly resist the officer's entry it necessarily follows that admission of testimony concerning his violent resistance did not violate his constitutional rights. *Elson*, 659 P.2d at 1201.[2]

The judgment of the superior court is AFFIRMED.

---

[2]. The *Elson* decision finds support in virtually every decision discussing the issue. Professor LaFave describes the rationale:

[T]he better basis of distinction [between this situation and a proper application of the "fruit of the poisonous tree" extension of the Exclusionary Rule] is that no exploitation of the prior illegality is involved and that the rationale of the exclusionary rule does not justify its extension to this extreme. 'Application of the exclusionary rule in such fashion,' as one court put it, 'would in effect give the victims of illegal searches a license to assault and murder the officers involved—a result manifestly unacceptable.'

3 W. LaFave, *Search and Seizure* § 11.4(j) at 680 (1978) (quoting *State v. Miller*, 282 N.C. 633, 194 S.E.2d 353, 358 (1973)). *See also United States v. King*, 724 F.2d 253 (1st Cir.1984); *United States v. Bailey*, 691 F.2d 1009 (11th Cir.1982), *cert. denied*, 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983); *Commonwealth v. Saia*, 372 Mass. 53, 360 N.E.2d 329 (1977); *People v. Townes*, 41 N.Y.2d 97, 390 N.Y.S.2d 893, 359 N.E.2d 402 (1976); *State v. Aydelotte*, 35 Wash. App. 125, 665 P.2d 443, 447–48 (1983); *State v. Gaffney*, 36 Or.App. 105, 583 P.2d 582 (1978).