COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and Senior Judge Frank
Argued by teleconference

UNPUBLISHED

COMMONWEALTH OF VIRGINIA

v.      Record No. 0849-19-2

ERIC TREMAINE WILLIAMS, JR.                MEMORANDUM OPINION[*] BY
                                           JUDGE RANDOLPH A. BEALES
COMMONWEALTH OF VIRGINIA                    OCTOBER 29, 2019

v.      Record No. 0850-19-2

DONNA CAROL WILLIAMS

FROM THE CIRCUIT COURT OF NEW KENT COUNTY
B. Elliott Bondurant, Judge

Kelsey M. Bulger, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs) for appellant.

Martin Mooradian for appellee Eric Tremaine Williams, Jr.

No brief or argument for appellee Donna Carol Williams.


In these Commonwealth's appeals, the circuit court granted the defendants' motions to

suppress testimony regarding the defendants' actions toward law enforcement officers based on a

finding that the defendants' arrest violated the Fourth Amendment of the United States Constitution.

Subsequent to granting the motions to suppress, the circuit court – over the objections of the

attorney for the Commonwealth – dismissed the indictments against the defendants. The

Commonwealth now appeals.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

In an appeal by the Commonwealth of an order of the circuit court suppressing evidence, we must view the evidence in the light most favorable to the defendant, as the party that prevailed below, and the circuit court's "findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them." Commonwealth v. Peterson, 15 Va. App. 486, 487 (1992).

So viewed, the evidence shows that on September 13, 2018, at approximately 9:00 p.m., Sergeant Wyatt Johnston of the New Kent County Sheriff's Office arrived at the house of James Riggs in response to a complaint of loud music coming from the neighbor's residence. Sergeant Johnston testified that, when he arrived at Riggs's house, he "[c]ould hear loud music coming from behind the garage at the Williams residence." Riggs's property was partially separated from the Williams property by trees and brush, but Sergeant Johnston testified, "You could see through it."

Sergeant Johnston testified that, while he was standing in a carport on Riggs's property, which was approximately fifty yards away from the Williamses' garage, Johnston could see a truck behind the Williamses' garage, and saw defendant-appellee Eric Williams ("Eric") "around the truck . . . walking back and forth and making profane comments towards Mr. Riggs'[s] property." After some time, the music from the Williams household stopped, and Sergeant Johnston heard "what sounded like a Weed Eater start up" and run for a period of time, followed by a chain saw that ran for a period of time. Sergeant Johnston then observed defendant-appellee Donna Williams ("Donna") – Eric's mother – move the truck to the front of the garage, and twice observed Eric "reaching in towards the floorboard of the truck, at which time the engine was revving up." Sergeant Johnston testified he felt Eric was performing these actions "to basically harass Mr. Riggs."

Sergeant Johnston and Deputy Sheriff Hargis decided to issue a summons to Eric for violation of New Kent County Code § 46-124, the New Kent County noise ordinance. After being on Riggs's property for thirty to forty-five minutes, both officers walked through the trees that separated the properties, taking "[k]ind of a straight shot from the carport area of Mr. Riggs'[s] residence to the front of the Williams garage where the truck was." Sergeant Johnston testified that, as the officers came through the trees, Eric said, "Come get some, bitches!" The officers walked up on the driveway to the area in front of the garage. The garage was separated from the main house by about twenty or thirty yards. Deputy Hargis explained to Eric and Donna that he was going to issue a summons to Eric, and Donna responded, "Just come tell us to stop."

Another deputy sheriff, Deputy McNew, arrived and remained with Sergeant Johnston near the Williams garage while Deputy Hargis took Eric's driver's license back to Riggs's property to write the summons for Eric. Sergeant Johnston testified that during this time, Eric was drinking a beer and "yelling, cursing, arguing" with the officers, including "ma[king] several threats towards us, calling us names." Sergeant Johnston further testified that "[a]fter the multitude of threats, the cursing, the belligerentness," he decided to arrest Eric for public intoxication. Sergeant Johnston testified, "As I placed my hands on him and told him he was under arrest, Ms. Williams then came between us, [and] began saying we weren't going to take him anywhere and started pushing me." This led to Donna, Sergeant Johnston, another deputy sheriff, and Eric "all four of us kind of grabbing" one another in a scuffle. Sergeant Johnston then decided to arrest Donna for felony assault of a law enforcement officer and misdemeanor obstruction of justice. Ultimately, both Eric and Donna were arrested.

Eric was indicted for felony assault of a law enforcement officer in violation of Code § 18.2-57(C) and misdemeanor obstructing justice in violation of Code § 18.2-460. Donna was

indicted for felony assault and battery of a law enforcement officer and misdemeanor obstructing justice, also in violation of Code § 18.2-57(C) and § 18.2-460 respectively. Prior to trial, Eric and Donna filed motions to suppress "the interaction between the New Kent County Sheriff's Office and defendant[s] on September 13, 2018 and all evidence arising out of the contacts," arguing that the officers improperly arrested the defendant-appellees within the Williamses' curtilage without a warrant or exigent circumstances to justify their entering the Williams property.

At the hearing on the defendants' motions to suppress, the trial judge stated:

> It's well settled that there are three ways in which a law enforcement officer may legally enter the private residence of another: one, by the authority of a lawful warrant, but we don't have a warrant here. Two, consent by someone authorized to give consent or someone who has the apparent authority to give consent; and then three is the existence of exigent circumstances.

The trial judge apparently relied upon the route by which the officers entered the Williams property, saying, "There's no expectation that a visitor is going to walk through a tree line from an adjoining property owner. If they had come up the main driveway and observed these things, that would have been one thing, but that's not what they did." The trial judge concluded, "I find that the Fourth Amendment has been violated and I'm going to grant the motion [to suppress]." The attorney for the Commonwealth argued that the use of the exclusionary rule was inappropriate here, and the trial judge replied, "I've already granted the motion to suppress, Ms. Burroughs [Deputy Commonwealth's Attorney], so at this point in time these matters are dismissed." The attorney for the Commonwealth asked "if we could pass this to a different date so the Commonwealth can explore its options for an interlocutory appeal on this. I would ask the case not be dismissed." The trial judge replied, "I've granted the motion, Ms. Burroughs, and I'm going to dismiss the matters. You all can note your appeal."

## II. ANALYSIS

On appeal, the Commonwealth notes two assignments of error.[1] First, it argues, "Williams's motion to suppress should not have been granted." Second, it argues, "Even if the motion to suppress was properly granted, dismissal of the case against Williams in its entirety was not the proper remedy."

On appeal, a defendant's claim of a violation of the Fourth Amendment presents a mixed question of law and fact that an appellate court must review *de novo*. Commonwealth v. Robertson, 275 Va. 559, 563 (2008). In making this determination, "an appellate court must give deference to the factual findings of the circuit court and give due weight to the inferences drawn from those factual findings; however, the appellate court must determine independently whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Id.

### Motion to Suppress

"[I]t is a 'settled rule that warrantless arrests in public places are valid,' but, absent another exception such as exigent circumstances, officers may not enter a home to make an arrest without a warrant, even when they have probable cause." Collins v. Virginia, 138 S. Ct. 1663, 1672 (2018) (quoting Payton v. New York, 445 U.S. 573, 587-90 (1980)). The curtilage of a home is regarded as "part of the home itself for Fourth Amendment purposes." Florida v. Jardines, 569 U.S. 1, 6 (2013) (quoting Oliver v. United States, 466 U.S. 170, 180 (1984)).

Assuming without deciding that the officers' crossing through the trees to get to the Williamses' property through their curtilage constituted a violation of the Fourth Amendment, the circuit court nevertheless erred in granting the motions to suppress. Regardless of whether

---

[1] In both cases now before us, the Commonwealth's assignments of error are identical, and the Commonwealth's arguments and analysis in its opening briefs for both cases are nearly identical.

the officers properly entered onto the Williams property, Eric's actions and Donna's actions after the officers were on their property constituted independent, intervening illegal acts against the officers that should not have been suppressed. This Court's decision in <u>Brown v. City of Danville</u>, 44 Va. App. 586 (2004), is directly on point.

In <u>Brown</u>, the trial court granted a motion to suppress evidence pertaining to Brown's charge of possession of cocaine based on the trial court's finding that the search of Brown was an improper search under the Fourth Amendment.[2] However, the trial court rejected Brown's argument that it could not consider the evidence pertaining to his resisting and struggling with the officer who conducted the improper search. On appeal, this Court affirmed Brown's conviction for obstructing justice, concluding, "The exclusionary rule does not, as Brown suggests, extend further and also prohibit testimony describing the defendant's own illegal actions following an unlawful search or seizure." <u>Id.</u> at 599. This Court held, "[I]f a person engages in new and distinct criminal acts in response to unlawful police conduct, the exclusionary rule does not apply, and evidence of the events constituting the new criminal activity, including testimony describing the defendant's own actions, is admissible."[3] <u>Id.</u> at 600.

---

[2] The trial court's decision in <u>Brown</u> to grant the motion to suppress was not at issue on the appeal to this Court. <u>Brown</u>, 44 Va. App. at 595 n.2.

[3] In support of its holding, this Court in <u>Brown</u> stated, "Application of the exclusionary rule in such fashion . . . would in effect give the victims of illegal searches a license to assault and murder the officers involved – a result manifestly unacceptable." <u>Id.</u> at 600 (quoting <u>Napageak v. State</u>, 729 P.2d 893, 895 n.2 (Alaska Ct. App. 1986)). In addition,

> extending the fruits doctrine to immunize a defendant from arrest for *new* crimes gives a defendant an intolerable *carte blanche* to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price for society to pay in order to deter police misconduct.

<u>Id.</u> at 602 (quoting <u>United States v. Bailey</u>, 691 F.2d 1009, 1017 (11th Cir. 1982)).

This principle from Brown applies to the matters that are the subject of these appeals. Therefore, we do not need to even reach the question of whether the path by which the officers walked onto the Williams property violated the Fourth Amendment.[4] That is because both Eric and Donna engaged in intervening illegal behavior against the officers once they were on the Williams property that is not subject to the exclusionary rule. Sergeant Johnston testified that Eric "made several threats towards" the officers, including saying, "Come get some, bitches" as the officers were arriving. Sergeant Johnston also stated that he decided to arrest Eric only "[a]fter the multitude of threats, the cursing, the belligerentness" displayed by Eric. Sergeant Johnston further testified that, when he placed his hands on Eric in order to arrest him, Donna "came between us, began saying we weren't going to take him anywhere and started pushing me." Donna's pushing and shoving of the officers led to a scuffle involving her, Sergeant Johnston, another deputy sheriff, and Eric.

Both Eric's threats and belligerence toward the officers as well as Donna's assaulting and battering of at least one of the officers constituted intervening criminal action resulting in attenuation of any earlier Fourth Amendment violation. Just as in Brown, the exclusionary rule does not apply to exclude evidence of these illegal actions by Eric and Donna, and "evidence of the events constituting the new criminal activity, including testimony describing the defendant[s'] own actions, is admissible." 44 Va. App. at 600. In short, even assuming without deciding that the officers walked onto the Williams property in a way that violated the Fourth

---

[4] We do not reach whether the officers had authority to cross onto the Williams property to give the Williamses a warning or a summons that they were violating the New Kent County noise ordinance (New Kent County Code § 46-124), because an appellate court should decide appeals "on the best and narrowest grounds available." Commonwealth v. Swann, 290 Va. 194, 196 (2015) (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4 (2010)). Given both Donna and Eric's independent intervening unlawful acts against the officers once they arrived on the Williams property, such an analysis would not be the "best and narrowest grounds available" for our decision.

Amendment, the Williamses do *not* then have *carte blanche* to do anything they wish to the officers such that evidence or testimony of those unlawful actions against the officers would then be suppressed and excluded from evidence under the exclusionary rule.

<u>The Circuit Court's Dismissal of the Charges</u>

After granting the defendants' motions to suppress, the circuit court "dismiss[ed] the matters," even after the Commonwealth requested to "explore its options for an interlocutory appeal on this." The circuit court erred in dismissing the charges as the Commonwealth made clear that it was likely to exercise its statutory right to a pretrial appeal.[5] <u>See e.g.</u>, <u>Commonwealth v. Lane</u>, No. 0318-99-2, at *1 n.1 (Va. Ct. App. Aug. 3, 1999) ("After granting the motion to suppress, the trial court dismissed the indictment. However, it lacked authority to dismiss at that time."). The Commonwealth is allowed by statute to seek a pretrial appeal when the circuit court suppresses evidence based on its holding that there was a violation of the Fourth Amendment, as the circuit court held here. <u>See</u> Code § 19.2-398(A)(2); Code § 19.2-400 ("Upon the filing of a timely notice of appeal, the order from which the pretrial appeal is taken and further trial proceedings in the circuit court, except for a bail hearing, shall thereby be suspended pending disposition of the appeal."); <u>Commonwealth v. DeBusk</u>, No. 0213-08-3, at *4 (Va. Ct. App. June 3, 2008) ("[T]he purpose of [Code § 19.2-400] is to prevent a circuit court from defeating the ability of the Commonwealth to pursue its appeal once the appeal is properly

---

[5] After the motion to suppress was granted by the trial court, the Commonwealth also should have been permitted to decide whether to proceed to trial. Given the separation of powers doctrine, <u>see</u> Va. Const. art. III, § 1, the judicial branch should not infringe upon the executive branch's decision (exercised by the Commonwealth's Attorney) of whether even to take a prosecution to trial. <u>See</u> <u>United States v. Armstrong</u>, 517 U.S. 456, 464 (1996); <u>Wayte v. United States</u>, 470 U.S. 598, 607 (1985). <u>See also</u> <u>Commonwealth v. Rosser</u>, No. 0132-14-2, at *7 (Va. Ct. App. June 17, 2014); <u>Commonwealth v. Ramsdell</u>, No. 2925-06-3, at *3 (Va. Ct. App. Apr. 20, 2007).

noted." (quoting Commonwealth v. West, 16 Va. App. 679, 685 (1993))). It was, therefore, error for the circuit court to dismiss the indictments.

## III. CONCLUSION

In summary, even assuming without deciding that the officers' way of entering onto the Williams property violated the Fourth Amendment, the circuit court erred in suppressing the evidence concerning the illegal actions then taken by Eric and Donna Williams that led to their arrests. Eric's belligerence and threats toward the officers from the moment of their arrival on the Williams property, as well as Donna's pushing, shoving, and subsequent scuffle with the officers, were independent intervening criminal acts that should not have been excluded from evidence under the exclusionary rule. Furthermore, the circuit court also erred in dismissing the indictments against Eric and Donna Williams when the Commonwealth had the statutory right, pursuant to Code § 19.2-398, to seek a pretrial appeal.

For all of these reasons, we reverse the circuit court's decisions granting the motion to suppress and the motion to dismiss in each matter, and we remand for further proceedings at trial consistent with this opinion.

Reversed and remanded.